

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2001

# Weston v. Pennsylvania

Precedential or Non-Precedential:

Docket 99-1608

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"Weston v. Pennsylvania" (2001). *2001 Decisions.* Paper 112.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/112

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 22, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1608

MICHAEL A. WESTON; DEBORAH WESTON, H/W,
        Appellants,

v.

COMMONWEALTH OF PENNSYLVANIA d/b/a
DEPARTMENT OF CORRECTIONS; STA TE
CORRECTIONAL INSTITUTION AT GRATERFORD;
DOLORES MERITHEW.

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 98-cv-03899)
District Judge: The Honorable James M. Kelly
U.S. Magistrate Judge: The Honorable Thomas J. Rueter

ARGUED: September 13, 2000

Before: BECKER, Chief Judge, NYGAARD, and AMBRO,
Circuit Judges.

(Filed: May 22, 2001)

Thomas M. Holland, Esq.
Jeffrey Campolongo, Esq. (Argued)
1522 Locust Street
Grace Hall
Philadelphia, PA 19102

  Counsel for Appellants

Randall J. Henzes, Esq. (Argued)
Office of Attorney General
 of Pennsylvania
21 South 12th Street, 3rd Floor
Philadelphia, PA 19107

  Counsel for Appellee

OPINION OF THE COURT

NYGAARD, Circuit Judge.

Appellant Michael Weston filed a sexual harassment civil action against his employer, the Pennsylvania Department of Corrections ("PDOC"), and Dolor es Merithew, a co-worker. Weston alleged violations of T itle VII, the Pennsylvania Human Relations Act ("PHRA"), and Pennsylvania common law. Weston's Title VII claim was premised on a hostile work environment theory. Specifically, Weston asserted that he was subjected to a hostile work environment as a result of the PDOC's failure to discipline Merithew after she had physically touched Weston on two occasions, and as a consequence of the comments, jokes and jibes made by employees and inmates who had learned of the incidents. In addition, Weston alleged that, after he complained to the PDOC about this harassment, the PDOC retaliated against him by reprimanding him and transferring him to a less desirable position.

The District Court dismissed Weston's T itle VII claim for "hostile work environment" sexual harassment as well as his state common law claims against the PDOC for failure to state a claim. The District Court granted summary judgment to the PDOC on Weston's retaliation claim. After

2

a bench trial, the District Court entered judgment in favor of Weston and against Merithew on the r emaining state law claims. Weston timely appealed. We have jurisdiction pursuant to 28 U.S.C. S 1291.

In this appeal, Weston challenges the District Court's disposition of both his hostile work environment claim and his retaliation claim. With respect to the hostile work environment claim, Weston asserts that it was error for the court to dismiss for failure to state a claim, as his complaint's allegations sufficed to make out a hostile work environment claim, particularly in light of the liberal notice pleading requirements contained in FED. R. CIV. P. 8. We decide that Weston's allegations concer ning the PDOC's response to the two incidents of physical touching were not adequate to state a Title VII hostile work environment claim, and we affirm the District Court's dismissal of that portion of Weston's complaint. However , we also conclude that Weston's allegations as to a hostile environment created as a result of the comments, jokes, and jibes made by co-workers and managers did meet the federal rules' liberal pleading requirements, and we ther efore reverse the District Court's dismissal of that component of W eston's hostile work environment claim, and remand for further discovery and proceedings. Finally, in r egard to Weston's averments as to a hostile environment cr eated as a result of verbal harassment on the part of inmates, while we agree with the District Court that those allegations, as they currently stand, do not suffice to state a T itle VII claim, we reverse the court's dismissal, and remand with instructions to grant Weston a specified period of time in which to amend (and amplify) that portion of his complaint.

With respect to the retaliation claim, Weston avers that it was error for the court to grant summary judgment, because he succeeded in creating a genuine issue as to the material fact that the PDOC took adverse action against him, in the form of two written reprimands and two suspensions without pay, as a result of his harassment complaints. We conclude that, under the cir cumstances present in Weston's case, the written r eprimands do not constitute adverse employment actions. We further decide that Weston failed to present sufficient evidence to establish

3

the requisite causal connection between the two suspensions and his complaints. Accordingly, we affirm the District Court's summary judgment grant on the r etaliation claim.

I.

A. Factual Background

Weston is a corrections officer at the State Correctional Institution at Graterford, Pennsylvania. At the time of this action, he worked in the Food Services Department as a trainer. His duties included supervising inmates who worked in the prison's kitchen. Merithew is also a corrections officer and held a similar position in the prison kitchen. Although testimony indicates that W eston and Merithew did not have an amicable working relationship, on February 11, 1997, Merithew massaged Weston's back in the presence of inmates. Weston found this physical contact offensive and told Merithew to stop. Merithew laughed in response, but apparently discontinued the activity.

Three days later, Weston tor e a visible hole in the seat of his pants. While his back was turned, Merithew placed her finger in the hole, touching his buttocks. As with the previous incident, this act occurred in the presence of inmates. Weston expressed his anger to Merithew and told her to leave him alone.

Weston complained to his supervisor about Merithew's actions, and she was given a written reprimand. Weston claimed that, as a result of Merithew's actions, he was subjected to offensive comments, jibes, and jokes made by co-workers, managers and inmates. According to Weston, the PDOC did not act in response to his complaints. In fact, Weston was reprimanded by the PDOC and transferred to a less desirable position.

B. Procedural Background

Weston sued both the PDOC and Merithew in the District Court. Weston alleged that the PDOC violated Title VII and the PHRA by failing to properly discipline Merithew after

Weston's complaints and that Weston was subjected to repeated jokes, jibes, and offensive comments by co-workers, managers and inmates. He also claimed that the PDOC retaliated against him for complaining about Merithew's conduct by reprimanding him and transferring him to a less desirable position.

The PDOC first moved to dismiss Weston's complaint for failure to state a claim upon which relief may be granted.[1] See FED. R. CIV. P . 12(b)(6). On September 29, 1998, the District Court granted the motion to dismiss, in part. Specifically, the court determined that W eston's complaint failed to allege facts that showed the PDOC was negligent in disciplining Merithew, and it held that Weston failed to establish the PDOC's liability under respondeat superior. Further, the District Court found that the jokes and offensive comments Weston experienced after the incidents did not constitute a hostile working environment. However, the District Court denied the PDOC's motion to dismiss Weston's retaliation claim.

After limited discovery, the PDOC moved for summary judgment on the remaining retaliation claim. Although Weston may have suffered adverse employment actions, the District Court held that he had not shown a causal connection between these actions and his complaints about Merithew's conduct. Even if he had established such a connection, the District Court suggested that the outcome would have been the same because the PDOC of fered a nondiscriminatory reason for its actions.[2]

_____

1. In his response to the PDOC's motion to dismiss, Weston conceded that his state law claims for assault, battery, intentional infliction of emotional distress, and negligent infliction of emotion distress were barred by sovereign immunity. Weston also abandoned his charge that his transfer to a less desirable position was a r etaliatory action by the PDOC.

2. Weston also sued Merithew individually. The District Court held a bench trial on June 1, 1999, and found that Merithew had committed a battery under state law. On June 3, 1999, the District Court entered judgment in favor of Weston and against Merithew and awarded compensatory damages in the amount of $1250.00.

5

II. Motion to Dismiss – The Hostile Work Environment
Claims

We exercise plenary review when examining a motion to dismiss pursuant to Federal Rule of Civil Pr ocedure 12(b)(6). Lorenz v. CSX Corp., 1 F .3d 1406, 1411 (3d Cir. 1993). We accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the plaintiff. Id. We will affir m a dismissal only if it appears certain that a plaintiff will be unable to support his claim. Wisniewski v. Johns–Manville Corp., 759 F .2d 271, 273 (3d Cir. 1985). Our review of Weston's complaint reveals two separate bases for hostile work environment sexual harassment –– one concerning the conduct and actions of the PDOC and Dolores Merithew and one concer ning unidentified "coworkers, managers and inmates." Complaint, P 18.

A. Hostile Work Environment Claims

Title VII of the Civil Rights Act of 1964 and the Pennsylvania Human Relations Act make it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment because of such individual's race, color, religion, sex or national origin." 42 U.S.C.S 2000e–2(a)(1).3 Hostile work environment harassment occurs when unwelcome sexual conduct unreasonably inter feres with a person's performance or creates an intimidating, hostile, or offensive working environment. Meritor Savs. Bank FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 2404 (1986) (quoting 29 C.F.R. S 1604.11(a)(3)). In order to be actionable, the harassment must be so severe or pervasive that it alters the conditions of the victim's employment and creates an abusive environment. Id.  at 67, 106 S.Ct. at

_____

3. The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably. See, e.g., Smith v. Pathmark Stores, Inc., No. 97–1561, 1998 WL 309916, at *3 (E.D. Pa. June 11, 1998) (interpreting the two statutes concurr ently in a sexual harassment case); Clark v. Commonwealth of Pennsylvania, 885 F.Supp. 694, 714 (E.D. Pa. 1995) (same in racial discrimination cases).

2405; see also Spain v. Gallegos, 26 F .3d 439, 446–47 (3d Cir. 1994).

In Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S.Ct. 367 (1993), the Supreme Court clarified the elements of a discrimination claim resulting from a hostile work environment. In order to fall within the purview of Title VII, the conduct in question must be severe and pervasive enough to create an "objectively hostile or abusive work environment –– an environment that a r easonable person would find hostile –– and an environment the victim-employee subjectively perceives as abusive or hostile." Id. at 21–22, 114 S.Ct. at 370–71. In determining whether an environment is hostile or abusive, we must look at numerous factors, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere of fensive utterance; whether it unreasonably interferes with an employee's work performance." Id. at 23, 114 S.Ct. at 371. The Supreme Court recently reaffirmed Harris' "severe and pervasive" test in Faragher v. City of Boca Raton, 524 U.S. 775, 783, 119 S.Ct. 2275, 2283 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 724, 732, 118 S.Ct. 2257, 2265 (1998).

After the Supreme Court's Faragher/Ellerth  decisions, employers must do more that merely take corrective action to remedy a hostile work environment situation. Employers also have an affirmative duty to prevent sexual harassment by supervisors. See Faragher, 524 U.S. at 793, 118 S.Ct. at 2293; Williams v. General Motors Corp., 187 F.3d 553, 561 (6th Cir. 1999). Although the Supreme Court has not addressed hostile work environment claims arising from the actions of a co-worker, we have developed a framework for evaluating such a claim:

> Five constituents must converge to bring a successful claim for a sexually hostile work environment under Title VII: (1) the employee suffer ed intentional discrimination because of their sex, (2) the discrimination was pervasive and regular , (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position, and (5) the existence of respondeat superior  liability.

7

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990) (footnote and citations omitted); accord Kunin v. Sears Roebuck & Co., 175 F.3d 289, 293 (3d Cir. 1999).

B. Hostile Work Environment Harassment and Merithew's Actions

In dismissing his complaint, the District Court determined that Weston could not establish a prima facie hostile work environment claim based on the PDOC's failure to adequately reprimand Merithew. It concluded that the alleged discrimination was not pervasive, r egular, or objectively detrimental, and that respondeat superior liability did not apply.

Weston alleged in his complaint that the PDOC was liable for Merithew's harassment because it failed to pr event her from assaulting him and did not adequately discipline her. This argument has no merit. Our rule "envisions prompt remedial action when the hostile environment is discovered." Bouton v. BMW of N. America, Inc., 29 F.3d 103, 110 (3d Cir. 1994). In other wor ds, when the source of the alleged harassment is a co-worker, a plaintiff must demonstrate that the employer failed to provide a reasonable avenue for complaint, or, if the employer was aware of the alleged harassment, that it failed to take appropriate remedial action. Kunin, 175 F.3d at 293 (citing Andrews, 895 F.2d at 1486 (liability exists where the defendant knew or should have known of the harassment and failed to take prompt remedial action)); see also 29 C.F.R. S 1604.11(d)(1999) (employer is liable for co-worker harassment if it knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action.); Kracunas v. Iona Coll., 119 F.3d 80, 89 (2d Cir. 1997).

Under our jurisprudence, the PDOC's failure to prevent an act of co-worker harassment, in and of itself, does not end the hostile environment inquiry. After W eston officially complained about Merithew's conduct, she received a written reprimand for violating the PDOC's policies against sexual harassment. Weston does not allege that the offensive conduct continued after the r eprimand. We have instructed that "an effective grievance pr ocedure -- one

8

that is known to the victim and that timely stops the harassment -- shields the employer from Title VII liability for hostile environment." Bouton, 29 F.3d at 110. Moreover, when an employer's response stops the harassment, there can be no employer liability under Title VII. Kunin, 175 F.3d at 294 ("By definition, there is no negligence if the [sexual harassment grievance] procedure is effective.") (citing Bouton, 29 F.3d at 110). The PDOC's grievance procedure was obviously known to Weston (he filed a complaint) and, by his own admission, it was effective. Liability cannot be imputed to the PDOC for Merithew's conduct or for its alleged failure to adequately reprimand her.

C. Hostile Work Environment and the Comments, Jokes,
        and Jibes of Co-workers, Managers and Inmates

Weston's complaint averred that the PDOC should be held liable for the comments, jokes, and jibes of inmates. In Slayton v. Ohio Dept. of Youth Serv., 206 F.3d 669 (6th Cir. 2000), the Court of Appeals for the Sixth Circuit determined that, without more, objectionable conduct by prison inmates cannot, in and of itself, be a sufficient predicate for a hostile work environment claim. Id. We agree that "prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways. By choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior ." Id. (citations omitted).

However, this is not an absolute rule. Prison liability for inmate conduct may indeed apply when, for example, the institution fails to take appropriate steps to remedy or prevent illegal inmate behavior. See id.; Waymire v. Harris County, Tex., 86 F.3d 424, 428-29 (5th Cir. 1996) (holding that because prison took prompt remedial action, jailer did not establish a hostile environment where a fellow jailer circulated sexually offensive inmate drawing). Moreover, we can find no authority which suggests that there is an absolute bar to Title VII liability when prison personnel encourage or instigate illegal inmate behavior .

Weston's complaint indicates that he was subjected to comments, jokes, and jibes by unspecified inmates.

9

Complaint at P 18. Absent further amplification -- for instance that prison officials encouraged the inmate's comments, or that prison officials knew of the harassing conduct but failed to remedy it -- this mer e allegation is insufficient to state a Title VII claim. However, Weston should have an opportunity to amend his complaint so as to make allegations, if possible, as to prison officials' instigation and/or knowledge of these events. W e believe the District Court erred in not providing Weston an opportunity to amend his complaint in this fashion. See FED. R. CIV. P. 15(a); Shane v. Fauver, 213 F.3d 113 (3d Cir. 2000); Borelli v. City of Reading, 532 F.2d 950 (3d Cir. 1976). We reverse the District Court and remand with instructions to grant Weston a specified period of time in which to amend the complaint.

Weston's second basis for employer liability is more complex. In his complaint, Weston alleges that he was subjected to "sexually offensive comments, jokes and jibes by fellow PDOC employees, managers and inmates." Complaint at P 18. On appeal, he has ar gued that the PDOC is liable for the jokes of its managers and W eston's co-workers because of the PDOC's negligent r esponse to these comments. His central argument is that the jokes, jibes, and comments continued unabated, ther eby creating a hostile work environment.

While the Supreme Court has stated that T itle VII grants employees "the right to work in an environment free from discriminatory intimidation, ridicule and insult," Meritor Savs. Bank, 477 U.S. at 65, 106 S.Ct. at 2405, it has likewise emphasized that not all workplace conduct that has sexual overtones can be characterized as forbidden harassment. See id. at 67, 106 S.Ct. at 2405-06. The alleged harassment must affect a "ter m, condition or privilege" of employment in order to fall within Title VII's purview. Id. Moreover, the Supr eme Court has instructed that a plaintiff must allege that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted gender discrimination. See Oncale v. Sundowner Offshore Servs. Inc., 523 U.S. 75, 79, 118 S.Ct. 998, 1002 (1998). The mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not

10

sufficiently affect the conditions of employment to implicate Title VII liability. See Schwapp v. T own of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

Weston's complaint includes little detail about the content of the offensive comments, jokes, and jibes. Instead, it merely claims that they wer e the result of Merithew's actions, and were made in retaliation for his filing of a grievance against her. See Complaint at P 18. By his own admission, the comments, jokes, and jibes were not directed at his gender. In fact, W eston's complaint fails to allege that he was targeted because of his gender. See Oncale, 523 U.S. at 79, 118 S.Ct. at 1002. Furthermore, the complaint makes no allegation that the conduct altered the conditions of Weston's employment or cr eated an abusive environment in which he had to work. See Meritor Savs. Bank, 477 U.S. at 67, 106 S.Ct. at 2505-06 (quoting Henson v. City of Dundee, 682 F.2d 897, 9040 (11th Cir. 1982)).

However, at oral argument, Weston's counsel argued that his allegations were sufficient to survive a motion to dismiss based on our liberal notice pleading r equirements. See FED. R. CIV. P . 8. Generally, in federal civil cases, a claimant does not have to set out in detail the facts upon which a claim is based, but must merely pr ovide a statement sufficient to put the opposing party on notice of the claim. FED. R. CIV. P. 8; Remick v. Manfredy, 238 F.3d 248, 264 (3d Cir. 2001); Foulk v. Donjon Marine Co., 144 F.3d 252 (3d Cir. 1998). In Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103 (1957), the Supreme Court set out the proper role of pleadings:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintif f's claim is and the grounds upon which it r ests. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pr etrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.

11

> The Federal Rules reject the approach that pleading is
> a game of skill in which one misstep by counsel may be
> decisive to the outcome and accept the principle that
> the purpose of pleading is to facilitate a pr oper decision
> on the merits.

Id. (citations omitted); see also Universe Tankships, Inc. v.
United States, 528 F.2d 73, 75 (3d Cir . 1975) (notice
pleading requires a party only to "disclose adequate
information as the basis of his claim for r elief."); Quinones
v. United States, 492 F.2d 1269, 1273 (3d Cir. 1974) ("[A]
complaint should not be dismissed for failur e to state a
claim unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would
entitle him to relief").

Dismissal under FED. R. CIV. P. 12(b)(6) is inappropriate
because Weston's complaint states a claim for hostile work
environment and therefore provides adequate notice to the
defense. Although Weston's allegations ar e not strong, they
are nonetheless sufficient to meet our lenient standards of
notice pleading. See, e.g., Brokaw v. Mercer County, 235
F.3d 1000, 1014 (7th Cir. 2000). Complaints "need not
plead law or match facts to every element of a legal theory."
Krieger v. Fadely, 211 F.3d 134, 136 (D.C. Cir. 2000)
(quoting Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir.
1998)); see also Powell v. Ridge, 189 F .3d 387, 394 (3d Cir.
1999); Caribbean Broad. Sys., Ltd. v. Cable & Wireless
P.L.C., 148 F.3d 1080, 1086 (D.C. Cir. 1998) ("[A] plaintiff
need not allege all the facts necessary to pr ove its claim.");
Atchinson v. District of Columbia, 73 F.3d 418, 421–22 (D.C.
Cir. 1996) ("A complaint . . . need not allege all that a
plaintiff must eventually prove . . ."); Gooding v. Warner–
Lambert Co., 744 F.2d 354, 357–59 (3d Cir . 1984)
(eschewing "highly technical pleading rules, which only
serve to trap the unwary practitioner," in favor of notice
pleading;) accord Sinclair v. Kleindienst , 711 F.2d 291, 293
(D.C. Cir. 1983) ("The Federal Rules of Civil Procedure do
not require a claimant to set out the pr ecise facts on which
the claim is based . . . . `Notice pleading' is sufficient.");
Williams v. Washington Metro. Ar ea Transit Auth., 721 F.2d
1412, 1418 n.12 (D.C. Cir. 1983); Fouche v. Jekyll Island–
State Park Auth., 713 F.2d 1518, 1525 (11th Cir. 1983).

Discrimination and other civil rights claims ar e clearly subject to notice pleading. Conley involved a class action by African-American railroad clerks who alleged that their union had breached its duty of fair repr esentation and discriminated against them in violation of the Railway Labor Act, 45 U.S.C. S 151. In reversing the Rule 12(b)(6) dismissal of the complaint, the Supreme Court r ejected defendant's argument that dismissal was pr oper because "the complaint failed to set forth specific facts to support its general allegations of discrimination." Conley, 355 U.S. at 47, 78 S.Ct. at 99. Thirty-five years later , in Leatherman v. Tarrant County, the Court reaffir med Conley and rejected the suggestion that a " `heightened pleading standard' -- more stringent than the usual pleading r equirements of Rule 8(a)--" should apply in civil rights cases. 507 U.S. at 164, 167-68, 113 S.Ct. at 1160-62.

Therefore, although we question the merits of Weston's claim for hostile work environment due to the comments, jokes, and jibes of his co-workers and managers, he has satisfied the extremely lenient requir ement of notice pleading. We will reverse the District Court and remand that portion of the case with instructions to per mit further discovery.

We note that, at this stage of the litigation, Weston does not present the most compelling of Title VII hostile work environment claims. Were this an appeal from a grant of summary judgment, we would be hard-pressed to reverse a disposition in PDOC's favor. However, this is an appeal from a 12(b)(6) dismissal and, although we consider the question to be an extremely close one, we conclude that Weston's allegations of a hostile work environment cr eated by the remarks of co-workers and managers suffices to state a Title VII claim.

III. Summary Judgment - The Retaliation Claim

To establish a prima facie case of r etaliation, a plaintiff must show that: (1) he or she engaged in a pr otected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the

13

protected activity and the adverse action. See Farrell v. Planters Lifesavers Co., 206 F.3d 271, 297 (3d Cir. 2000); see also, e.g., Kachmar v. Sungard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997); Krouse v. American Sterilized Co., 126 F.3d 494, 500 (3d Cir. 1997) (describing the third requirement as a "causal connection"); Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

It is undisputed that Weston's sexual harassment complaint to his supervisor on February 15, 1997, and his similar inquiries on February 26, March 26, and April 25 were protected activities. See DiIenno v. Goodwill Indus. of Mid-Eastern Pennsylvania, 162 F.3d 235, 236 (3d Cir. 1998). Moreover, his filing of a complaint with the Equal Opportunity Employment Commission on July 16, 1997, was also protected. See Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997).

The District Court identified four adverse employment actions, the second element of a prima facie case. First, Weston suffered two suspensions without pay in June and August of 1998. It is not disputed that these suspensions were adverse employment actions. However , the parties disagree on whether the written reprimands on March 3, 1997, and May 15, 1997, can be similarly characterized. We have specifically found oral reprimands not sufficiently adverse to qualify under the statute. See Robinson, 120 F.3d at 1301 (holding that unsubstantiated oral reprimands and unnecessary derogatory comments wer e not adverse employment actions in a retaliatory conduct case). The District Court, however, found Weston's written reprimands distinguishable from oral reprimands and therefore held that they were adverse employment actions. In the circumstances of this case, we disagree.

A. The Written Reprimands

Title VII specifically prohibits action which would "deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee." 42 U.S.C. S 2000e-2(a). The Supr eme Court has defined a tangible, adverse employment action as a "significant change in employment status, such as hiring,

14

firing, failing to promote, reassignment, or a decision causing a significant change in benefits." Burlington Indus. Inc. v. Ellerth, 524 U.S. 742, 749, 118 S.Ct. 2257, 2268 (1998). In the context of this case, Weston must show, among other things, that these written reprimands affected the terms or conditions of his employment.

The District Court believed that Weston satisfied this burden because the reprimands in question were written instead of oral. Additionally, the District Court stressed that the reprimands were placed in Weston's personnel file for a period of six months.4 The District Court found that these reprimands rose to a level serious enough to trigger employer liability because of their "presumed" effect on compensation, terms, conditions or privileges of Weston's employment.

We conclude, however, that Weston failed to establish how these two reprimands effect a material change in the terms or conditions of his employment. We cannot, therefore, characterize them as adverse employment actions. Weston's own deposition testimony indicates that he was not demoted in title, did not have his work schedule changed, was not reassigned to a different position or location in the prison, did not have his hours or work changed or altered in any way, and that he was not denied any pay raise or promotion as a result of these reprimands. Additionally, the reprimands were of a temporary nature. Because they were not permanently affixed to Weston's employment file, we cannot see how they changed or altered his employment status in any way. Moreover, Weston suffered no reduction in pay, reassignment, firing, or any similar employment action. Hence, we focus on whether there was a causal connection between Weston's protected activity and the two suspensions without pay that he received on June 12, 1998 and July 31, 1998. We note that the burden of establishing such a connection falls upon Weston. See Farrell, 206 F.3d at 279.

_____

4. At oral argument, counsel for the PDOC confirmed this practice and additionally noted that although a written reprimand may remain in a correction officer's employment file longer than six months, a collective bargaining agreement prohibits the PDOC from using or making reference to any such reprimand older than six months.

15

B. Causation

On appeal, Weston presents several arguments that there was sufficient evidence to establish a causal connection between the filing of his complaints and his two suspensions. Initially, he argues that the timing of these events suggests a connection between his complaints and the adverse employment actions taken against him. With one exception, we have never held that timing alone can be sufficient to establish causation.5 We conclude that the timing in this case is not unusual enough to become a causal link.6

The one-day and three-day suspensions, which Weston received in the summer of 1998, were more than a year distant from his protected activities. Absent other evidence, we cannot infer causation. See Krouse, 126 F.3d at 504 (a nineteen month interlude between the protected activity and the alleged retaliation, without any other evidence of discriminatory animus in the interim, was insufficient as a matter of law to support an inference of causation).

Next, Weston argues that the District Court erred by not considering a "pattern of antagonism," which he believes was evident throughout the entire course of events. Weston relies on our opinion in Kachmar, where we held it was improper for the District Court not to consider evidence establishing such a pattern. 109 F.3d at 177. Kachmar is not relevant to Weston's claims. In Kachmar, retaliatory termination occurred one year after the protected action. See id. at 177. Throughout the intervening year however, there were numerous circumstances that suggested

_____

5. In Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989), we found that
an employee's dismissal two days after the company learned of his EEOC complaint was sufficiently persuasive evidence to satisfy the causation element of a prima facie case. Our holding in Jalil, however, is limited to
the unusually suggestive facts of that case, which are not present in this appeal.

6. We need not consider Weston's EEOC complaint. He does not argue that the PDOC was aware of this filing. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 415 (3d Cir . 1999) (requiring that the party responsible for the adverse conduct be aware of the protected activity before causation can be inferred).

16

termination might occur, including statements that the plaintiff was off the management track and that she should start looking for another job. See id. at 178. We concluded that the cumulative effect revealed a pattern of antagonism, which overcame any doubts raised by the temporal separation of events. Thus, we held that causation had been established. Unlike Kachmar, the alleged pattern of antagonism in this case did not portend any futur e retaliation. Instead, the adverse employment actions were discrete responses to particular occurr ences. Whereas a pattern of antagonism was clear on the facts in Kachmar, there is no evidence in this case that the PDOC's actions were related.

Weston also argues that a causal connection can be established by the inconsistent explanations the PDOC provided for its reprimands. Inconsistent explanations can be an alternative method for establishing a causal link between a protected activity and adverse employment actions. See Waddell v. Small Tube Pr ods., Inc., 799 F.2d 73, 77 (3d Cir. 1986). Weston contends that the PDOC gave inconsistent accounts of whether other kitchen employees had attendance records similar to W eston's. His argument is unclear. Assuming arguendo that an inconsistency exists, it still does not establish a causal connection because Weston's two adverse employment actions wer e unrelated to his attendance record.

Weston argues that the District Court erred by not considering whether the PDOC's proffer ed explanations for the adverse employment actions were a pr etext for retaliation. Typically, pretext evidence is considered after a prima face case is established and the defendant has produced non-discriminatory or non-r etaliatory explanations for that behavior. See Delli Santi v. CNA Ins. Co. 88 F.3d 192, 199 (3d Cir. 1996) (noting that the familiar McDonnell-Douglas burden shifting dichotomy applies to retaliation claims).

Weston is correct that pretext evidence can be relevant to causation. See Farrell, 206 F .3d at 287. As such, he argues that his two 1998 suspensions -- justified by the PDOC as discipline for attendance problems -- wer e imposed in retaliation for his sexual harassment complaint. The

17

PDOC's explanations, the argument continues, were pretextual. Such pretext, he maintains, evidences the PDOC's motivation, which is directly relevant to causation. In support of this position, he claims that other similarly situated officers were not disciplined.

Weston's argument that the "attendance" justifications for his suspensions were pretextual fails. First, Weston does not dispute that his poor attendance was a valid r eason for the discipline he received. He merely ar gues that he was treated unfairly -- that he was punished while other culinary service officers with the same attendance problems were not. However, as the District Court noted, there were at least four employees dismissed for attendance pr oblems during the same period of time. In addition, the decisions to suspend Weston were not made by his immediate supervisor to whom he directed his sexual harassment complaints. Although Weston's supervisor did play a role in the suspensions, the suspensions were ultimately decided upon by a panel of three hearing officers. 7 Thus, retaliatory animus, whether for purposes of establishing causation or pretext, cannot be ascribed to the hearing officers who made the suspension determination. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 415 (3d Cir. 1999) (affirming a grant of summary judgment in a retaliation claim on the basis that the responsible persons had no information about the underlying protected discrimination claim).

Weston simply cannot create a genuine issue of material fact that his suspensions were imposed in r etaliation for his sexual harassment claims. He cannot establish causation or pretext.

IV. Conclusion

In summation, we will reverse that portion of the District Court's dismissal of Weston's complaint as to the

_____

7. Neither party addresses whether those hearing officers were aware of Weston's sexual harassment complaints. However, the PDOC does represent that the hearing officers wer e unaware of Weston's EEOC filing.

allegations that the comments, jokes, and jibes of his co-workers and managers created a hostile work environment for which the PDOC would be liable, and we r emand the cause for further discovery and proceedings. W ith regard to that portion of Weston's complaint containing allegations that comments, jokes, and jibes of inmates cr eated a hostile work environment, we reverse the District Court and remand with instructions to grant Weston a specified period of time in which to amend the complaint. We affirm the District Court's Fed. R. Civ. P. 12(b)(6) dismissal of Weston's complaint against the PDOC in all other respects.

We likewise affirm the District Court's grant of summary judgment in favor of the PDOC on Weston's r etaliation claims.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

19