**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2320
_____

HARISADHAN PATRA; PETULA VAZ,
Appellant

v.

PENNSYLVANIA STATE SYSTEM OF HIGHER EDUCATION;
BLOOMSBURG UNIVERSITY, of Pennsylvania; FRANK T. BROGAN,
individually and in his official capacity as Chancellor; DAVID SOLTZ,
individually and in his official capacity as President of Bloomsburg
University; RICHARD ANGELO; JORGE E. GONZALEZ; IRA BLAKE;
ROBERT P. MARANDE; THOMAS R. ZALEWSKI
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-14-cv-02265)
District Judge:  Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 4, 2021
Before:  MCKEE, SHWARTZ and RESTREPO, Circuit Judges

(Opinion filed July 19, 2023)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Harisadhan Patra and Petula Vaz appeal pro se from the District Court's order granting summary judgment to the defendants. We will affirm the District Court's judgment.

I.

Patra and Vaz, who are married and originally from India, were hired as professors at Bloomsburg University in 2010. The plaintiffs alleged that, during their interview, Defendants Richard Angelo (the Department Chair at the time) and Robert Marande (the College Dean) orally agreed to cover the couple's relocation costs and provide them with 75,000 dollars in "start-up funds" for two laboratories with specific equipment. See ECF No. 73-2 at 17 [hereinafter "Vaz Dep."]. Angelo and Marande also assured the couple that they would be allowed to teach in their areas of expertise. These oral agreements were not included in the plaintiffs' written contracts. See ECF Nos. 72-4 at 83 (Patra's contract) and 72-8 at 114 (Vaz's contract); see also ECF No. 73-1 at 35 [hereinafter "Patra Dep."] (explaining Patra's unsuccessful efforts to formalize the oral agreements).

Upon the plaintiffs' arrival at Bloomsburg in August 2010, Angelo and Marande reneged on their oral agreements, citing department-wide financial issues. In their depositions, Patra and Vaz asserted that they were denied relocation and start-up costs and given inadequate lab space and equipment, while other professors received start-up funds and had well-equipped labs. Unlike her colleagues, Vaz was not assigned to teach

in her area of expertise. She was also made to teach a consolidated course, giving her, in essence, five courses rather than the usual four. Additionally, another professor, Defendant Jorge Gonzalez, was arrogant and disrespectful to the plaintiffs.

Like all new hires, the plaintiffs were evaluated annually to determine whether their appointments would be renewed.[1] During their first year, Patra and Vaz received overall positive evaluations. The Provost observed that Patra had started to establish his lab and was expected to pursue his research agenda. He described Vaz's departmental service as "admirable." ECF No. 72-9 at 1. Two evaluators noted that Patra needed to provide clearer explanations to his students, and the Provost stated that Vaz's student evaluations indicated "room for improvement." See id. Marande encouraged Vaz to participate on a university-wide committee. The plaintiffs' contracts were renewed.

The following year, the plaintiffs continued to have disputes with the department about their funding and equipment needs. According to the plaintiffs, Angelo became increasingly hostile. On February 23, 2012, after Patra confronted him about his alleged misappropriation of the plaintiffs' internal grant funds, Angelo became irate and "completely lost it," screaming at Patra. See Vaz Dep. at 22–23.

Patra's second-year evaluations were mixed. He was commended for his publication record; however, the evaluation committee expressed concern about his

---

[1] The evaluators included the Department Chair, other professors from Patra and Vaz's department, and several non-departmental administrators.

teaching, observing that most of his students "have a hard time following or understanding [Patra's] explanations." ECF No. 72-5 at 34–35. Patra was also encouraged to secure external grant funds. Vaz's evaluations were more positive, noting that her teaching had improved. She was again encouraged to pursue university-wide service opportunities. The plaintiffs' contracts were again renewed.

The following fall, Angelo (who had been promoted to Assistant Dean) and Gonzalez (who had become the Department Chair) made several offensive remarks to the plaintiffs about their race and religion.[2] Angelo mocked the Hindu practice of making food offerings to God, see Vaz Dep. at 58–59, and Gonzalez told Patra that "Indian men have vaginas" and "cannot control their wives," Patra Dep. at 97. More than once, Gonzalez told the plaintiffs that if he were not a professor, he would be a "sniper," and that there are "some people in the world who deserve to be taken out." Vaz Dep. at 63–64.

In December 2012, the plaintiffs submitted charges of discrimination to the Equal Employment Opportunity Commission ("EEOC"). Soon after, Patra's teaching assignments were changed, and Gonzalez began to surveil and "stalk" the plaintiffs. See id. at 105–06. To escape the abusive work environment at Bloomsburg, Patra and Vaz

---

[2] The plaintiffs do not know exactly when or how often these comments were made. Patra alleged that Angelo made ethnically offensive comments for the first time in 2011 and "several times" in 2012. See Patra Dep. at 89. Gonzalez's comments were made in 2012, but he kept making "[t]hese types of comments" after 2012. Id. at 99–100.

applied for openings at Utah State University. Utah State offered them the positions, which they accepted in early 2013. However, the couple decided to remain at Bloomsburg. In March 2013, the plaintiffs made additional EEOC complaints.

Additionally, in fall 2012, Patra and Vaz discovered that the graduation statistics being published by their department were incorrect and reported the inaccuracies to Angelo, Marande, and Gonzalez. They continued to raise the issue in department meetings and e-mails to administrators throughout the school year.

The plaintiffs' third-year evaluations were worse than before. Patra's student reviews had plummeted, and several students had met with Marande to discuss Patra's problematic teaching and grading practices. The evaluation committee observed that Vaz's teaching had continued to improve but expressed concern that her publications to date had been made using her previous affiliation with the University of Nebraska, not Bloomsburg. Gonzalez and Marande noted that Vaz had not used the clinical space or equipment provided to her. The Provost opined that Vaz's lack of research development was reasonable given that she had been focused on improving her teaching, but suggested that, moving forward, she work with the department to establish an "aggressive timeline" for establishing a functional lab. ECF No. 72-10 at 49. The plaintiffs' contracts were renewed, although three evaluators recommended against Patra's renewal.

The plaintiffs alleged that, throughout their fourth year, Gonzalez continued to generally intimidate and harass them. They filed additional EEOC charges in October

5

2013 and raised numerous internal complaints via e-mail and in meetings with administrators. They asserted that department and university administrators conspired to harass them and thwart their success in retaliation for their filing EEOC charges and whistleblowing about the inaccurate graduation rates.

In early 2014, the plaintiffs were notified that their contracts at Bloomsburg would not be renewed. Patra's student evaluations had shown no improvement, and there were severe inadequacies with regard to his research and departmental service. While Vaz's undergraduate student evaluations were positive, a large number of her graduate students rated her as "average." See ECF No. 72-11 at 27. She also had not progressed in developing an independent line of research at Bloomsburg, nor had she attempted to receive outside funding. The evaluators noted that tenure-track professors are expected to demonstrate not only strength in teaching, scholarship, and service, but also continual improvement—and that Vaz had stagnated or even regressed in the areas of research and service. The departmental evaluation committee's decisions not to renew were unanimous as to both Patra and Vaz and supported by the university-wide tenure committee.

In November 2014, the plaintiffs filed a complaint in the District Court against the University, its state-controlled parent organization, and several Bloomsburg employees, alleging: (1) Title VII discrimination and retaliation based on their race and religion, (2) retaliation in violation of the First Amendment, (3) conspiracy under 42 U.S.C.

§ 1983, and (4) violations of state law. The defendants moved for summary judgment. The District Court granted the motion on procedural grounds, citing the plaintiffs' non-compliance with the Federal Rules of Civil Procedure. The plaintiffs appealed, and we issued a partial remand to revisit the merits of the plaintiffs' claims. See Patra v. Pa. State Sys. of Higher Educ., 779 F. App'x 105 (3d Cir. 2019). With direction from the District Court, the plaintiffs submitted a new brief in opposition to the defendants' motion. Addressing the merits of the plaintiffs' case, the District Court determined that the defendants were entitled to judgment as a matter of law. Patra and Vaz appealed.[3]

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's grant of summary judgment. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "[w]e view the facts and draw all reasonable inferences in the non-movant's favor," we will conclude that "[a] disputed issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." Resch v. Krapf's

---

[3] To the extent that Patra and Vaz now challenge the District Court's orders regarding the deposition schedule, see ECF Nos. 58 and 61; Appellants' Br. at 76–78 (explaining that the plaintiffs "do not seek reversal" of these orders), the issue is forfeited because it was not raised in their prior appeal, see Beazer E., Inc. v. Mead Corp., 525 F.3d 255, 263 (3d Cir. 2008).

Coaches, Inc., 785 F.3d 869, 871 n.3 (3d Cir. 2015). We may affirm for any reason supported by the record. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011).

III.

We first address the plaintiffs' Title VII discrimination claims. To establish a prima facie case of disparate treatment under Title VII, Patra and Vaz were required to show that: (1) they belong to a protected class, (2) they were qualified for the positions they occupied, and (3) they were subject to an adverse employment action ("AEA") (4) under circumstances that give rise to an inference of unlawful discrimination. See In re Tribune Media Co., 902 F.3d 384, 401 (3d Cir. 2018). After a prima facie case is made, the burden shifts to the defendants to offer a legitimate, non-discriminatory reason for the AEA. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Then, the burden shifts back to the plaintiffs to demonstrate that the defendants' reason was, in fact, pretext for discrimination. Id. at 803–04.

Patra and Vaz argue that the District Court erred in concluding that the defendants' negative fourth-year evaluations and the non-renewal of their contracts were the only AEAs that they suffered. See Mem. Op., ECF No. 109 at 13–14. They claim that the record supports additional AEAs: (1) the defendants' failure to provide them with promised relocation costs and start-up funds, (2) the defendants' failure to provide them with functional labs and equipment, and (3) the defendants' failure to provide them with teaching opportunities in their areas of expertise and summer teaching opportunities. See

8

Appellants' Br. at 44–45. This argument is unavailing because the plaintiffs failed to establish that the additional AEAs arose under circumstances that could give rise to an inference of discrimination.

Declining to provide the plaintiffs with funds, equipment, or teaching opportunities could be considered AEAs. See Weston v. Pennsylvania, 251 F.3d 420, 431 (3d Cir. 2001) overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006) (explaining that an AEA is one that renders a "material change" in working conditions). However, "[t]he central focus of the prima facie case is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003) (per curiam) (internal quotation marks and citation omitted). Here, the record does not support an inference that Patra and Vaz were denied funds or opportunities that other professors in the department received—let alone that the defendants denied them such things on account of their race or religion.

The plaintiffs' allegations that they were treated differently than their non-Indian peers are, for the most part, vague, speculative, and riddled with contradictions. For example, Patra's assertion that he was asked to give some research equipment to a non-Indian professor, is not, without more, evidence of racial animus. See Patra Dep. at 71–72. And there is no support for the plaintiffs' allegation that other professors received start-up funds rather than being made to solicit funding through grants. See ECF Nos.

9

72-4 at 83 and 72-8 at 114 (showing that grant-writing activities were "expected" as part of the plaintiffs' contracts). Nor does the record support the contention that the plaintiffs were given unusual teaching assignments. See Patra Dep. at 85 (noting that other professors complained about being made to teach lower-level courses).

Moreover, the plaintiffs failed to support their more specific allegations with evidence that other professors were "similarly situated" with regard to them. See Patterson v. Avery Dennison Corp., 281 F.3d 676, 680 (7th Cir. 2002). The plaintiffs stated that a non-Indian professor named Robert Nozza was provided with relocation costs, see Vaz Dep. at 51, and that a non-Indian professor named Pam Smith was given a more reasonable teaching assignment than Vaz, see id. at 88. However, the plaintiffs did not show that either non-Indian professor was "directly comparable to [them] in all material respects." See Patterson, 281 at 680. Thus, as to the additional AEAs, Patra and Vaz failed to state a prima facie case of disparate treatment.

As to the AEAs that the District Court did address—the defendants' negative fourth-year evaluations and the non-renewal of the plaintiffs' contracts—we agree that the plaintiffs failed to show that the defendants' ample and well-supported non-discriminatory reasons were mere pretext for discrimination under the McDonnell Douglas burden-shifting framework. See Mem. Op., ECF No. 109 at 14–16. Accordingly, the District Court properly granted summary judgment on the plaintiffs' disparate treatment claim.

10

IV.

We now turn to the plaintiffs' Title VII retaliation claim. To establish a prima facie case of retaliation, Patra and Vaz were required to show that: (1) they engaged in activity protected by Title VII, (2) the defendants took adverse employment action against them, and (3) there was a causal connection between the protected activity and the adverse action. Moore v. City of Philadelphia, 461 F.3d 331, 340–41 (3d Cir. 2006). The McDonnell Douglas burden-shifting framework applies in the retaliation context, too. Id. at 342.

As with their discrimination claim, the plaintiffs argue that the District Court erred in failing to consider certain retaliatory AEAs. In addition to their negative evaluations and the non-renewal of their contracts, the plaintiffs argue that the following actions were AEAs: (1) the defendants' misappropriating grant funds, (2) the defendants' assigning unreasonable work schedules and teaching assignments outside of the plaintiffs' specialty areas, and (3) the defendants' refusing to allow Patra to resume teaching after he returned from medical leave. See Appellants' Br. at 47. This argument fails for similar reasons as the plaintiffs' previous argument.

First, the record does not support the assertion that the defendants misappropriated the plaintiffs' grant funds. Nor, as explained above, does the record support the assertion that Patra and Vaz were given unreasonable teaching assignments. There is also no evidence demonstrating that the defendants' refusal to allow Patra to resume teaching

11

after returning from medical leave was an unusual practice. See Patra Dep. at 216, 221 (explaining that Patra was not permitted to return to teaching because changing instructors around the finals period risked disrupting the class). Besides, none of these actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." See Moore, 461 F.3d at 341. Indeed, the plaintiffs were not dissuaded: Patra and Vaz made continuous internal and external complaints from 2012 until their termination. See Patra Dep. at 291.

Second, even if the record did support the plaintiffs' alleged AEAs, the couple failed to establish causation. Patra stated that the defendants changed his teaching assignment in response to the plaintiffs' filing their first EEOC charges in December 2012. See id. at 81, 140. However, he had been receiving poor student evaluations for several semesters prior to the change. See Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 258 (3d Cir. 2017) (explaining that a plaintiff must show that the AEA would not have been committed "but for" the protected activity). Moreover, the temporal proximity between when the plaintiffs filed their first EEOC complaint (December 2012) and when the defendants decided not to renew their contracts (January 2014) is not "unusually suggestive of retaliatory motive." See id. at 260.

Accordingly, the plaintiffs did not state a prima facie case of retaliation under Title VII. Additionally, even if the plaintiffs had stated a prima facie case, under the McDonnell Douglas burden-shifting framework, they failed to overcome the defendants'

12

well-documented reasons for not renewing their contracts.

V.

Patra and Vaz also argue that the District Court did not consider the evidence in support of their hostile work environment claim. To succeed on such a claim, the couple had to show that: (1) they suffered intentional discrimination because of their race or religion, (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected them, (4) the discrimination would detrimentally affect a reasonable person in similar circumstances, and (5) the existence of respondeat superior liability. Tribune, 902 F.3d at 399. They failed to do so.

The plaintiffs made numerous allegations about Angelo and Gonzalez's hostile behavior. However, most of the alleged incidents had nothing to do with the couple's race or religion, see, e.g., Vaz Dep. at 62 (claiming that Gonzalez entered Patra's locked office without his permission and took one of his books), and none of their allegations were corroborated. We agree with the District Court that the few comments that Angelo and Gonzalez made about the plaintiffs' race or religion, while offensive, were too isolated to support a hostile work environment claim. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Moreover, the plaintiffs failed to account for the fact that, despite being offered positions at Utah State at the alleged height of the defendants'

abusive behavior, they chose not to leave Bloomsburg.[4]  Accordingly, Patra and Vaz

failed to make a prima facie hostile work environment claim under Title VII.

VI.

The plaintiffs also argue that the District Court incorrectly decided their First

Amendment claim, which was based on their whistleblowing regarding the department's

inaccurate published graduation rates.  To make a First Amendment retaliation claim,

Patra and Vaz had to show that: (1) their speech was protected by the First Amendment,

and (2) the defendants' retaliatory action was substantially motivated by the protected

activity.  Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006).  Public

employees' speech is only protected when they speak as citizens rather than within the

scope of their duties.  See Javitz v. Cty. of Luzerne, 940 F.3d 858, 864–65 (3d Cir. 2019)

(explaining that *who* the plaintiffs spoke to, *what* they spoke about, and *why* they spoke

are central to the protected speech inquiry).

During their depositions, the plaintiffs stated that they reported the department's

inaccurate graduation statistics as "citizen[s] of the state," and that such reporting was not

part of their official duties.  Vaz Dep. at 135–36.  However, their speech was limited to

---

[4] There is nothing in the record to support Patra's suggestion that their appointments at
Utah State fell through because of the defendants' investigation into Patra's failure to
send in his grades while on medical leave.  According to Patra, the investigation was
never disclosed to Utah State.  See Patra Dep. at 231; see also Vaz Dep. at 200
(explaining that their Utah State contacts were "really upset" that Patra and Vaz backed
out of the agreement).

14

internal e-mails and private conversations with colleagues, not the community at large, and thus it was not protected. See id. at 134–35; see also De Ritis v. McGarrigle, 861 F.3d 444, 454 (3d Cir. 2017) (explaining that, generally, public employees' internal complaints about internal policies are not protected speech). Even if the plaintiffs' speech *was* protected under the First Amendment, they concede that, far from "chilling" their speech, see Appellants' Br. at 66–77, the defendants' actions never dissuaded them from speaking out about the school's graduation rates, see Patra Dep. at 291 (stating that the plaintiffs "never stopped" blowing the whistle). Besides, there is no indication from the record that the defendants' ultimate decision not to renew the plaintiffs' contracts was a result of their whistleblowing rather than their increasingly inadequate performance in the areas of teaching, research, and departmental service.[5] Thus, Patra and Vaz's First Amendment claim fails.[6]

## VII.

Finally, the plaintiffs' state law claims lack merit. Their claims under the Pennsylvania Human Relations Act ("PHRA") fail for the same reasons that their Title VII claims fail. See Simpson v. Kay Jewelers, Inc., 142 F.3d 639, 644 n.4 (3d Cir. 1998)

---

[5] In fact, because of the plaintiffs' reporting, Bloomsburg revised the incorrect graduation statistics. See ECF No. 73 at 26 n.11.

[6] Because the plaintiffs failed to establish that their constitutional rights were violated, their § 1983 conspiracy claim also fails. See Dykes v. Se. Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995) (concluding that we need not reach the issue of conspiracy where there is no cognizable violation of constitutional rights).

15

(explaining that we use the same framework to assess Title VII and PHRA claims). Additionally, the plaintiffs' allegations—supported by nothing but their own deposition testimony—that the defendants intentionally inflated the graduation statistics for their personal gain are too speculative to establish a claim under the Pennsylvania Whistleblower Law. See generally Sukenik v. Twp. of Elizabeth, 131 A.3d 550, 555–56 (Pa. Commw. Ct. 2016). And there is nothing in the record to support the plaintiffs' claims of defamation, intentional infliction of emotional distress, or loss of consortium.

## VIII.

For the above reasons, we will affirm the judgment of the District Court. The plaintiffs' motion to expand the record pursuant to Federal Rule of Appellate Procedure 10(e) is denied.