**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 18-2389

————————

DONNA DAVIS JAVITZ,
Appellant

v.

COUNTY OF LUZERNE;
ROBERT LAWTON, Individually;
DAVID PARSNIK, Individually

————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. Action No. 3-15-cv-02443)
District Judge: Honorable Robert D. Mariani

————————

Argued: May 1, 2019

————————

Before: RESTREPO, PORTER, and FISHER, *Circuit Judges*.

(Opinion Filed:  October 10, 2019)
—

Matthew T. Comerford
Curt M. Parkins
Comerford Law
204 Wyoming Avenue
Scranton, PA 18503

Donna EM Davis [ARGUED]
651 Simpson Street
Throop, PA 18512

*Counsel for Appellant*

Mark W. Bufalino [ARGUED]
John G. Dean
Elliott Greenleaf & Dean
39 Public Square
Suite 100
Wilkes-Barre, PA 18701

    *Counsel for Appellees*

Vernon L. Francis [ARGUED]
Dechert
2929 Arch Street
18th Floor, Cica Centre
Philadelphia, PA 19104

Mary Catherine Roper
American Civil Liberties Union of Pennsylvania
P.O. Box 60173
Philadelphia, PA 19106

    *Counsel for Amicus Appellants,*
    *American Civil Liberties Union*

_____

OPINION OF THE COURT
_____

**RESTREPO**, *Circuit Judge*.

Donna Davis-Javitz ("Javitz") was hired as the Director of Human Resources for Luzerne County. Shortly into her tenure, she was allegedly the victim of an illegal recording by a public employee in her role as local union representative. After reporting this crime, Javitz's relationship with her employer became rocky, and she was subsequently fired. She now alleges that her firing was unconstitutional under the First

2

Amendment and, alternatively, under the Fourteenth Amendment's Due Process Clause. The District Court ruled against Javitz on both claims. For the reasons that follow, we will affirm the District Court's due process ruling, but will reverse and remand its First Amendment ruling.

## I.

In July 2014, Javitz was offered a position with Luzerne County as the Director of Human Resources. **AI 57**[1], **¶ 22.** Her offer letter contained the terms of her employment, and described the job as: "Management Level, Non Union, ***Exempt***, Regular Full Time," and that her position was "***at will***." AI 57 ¶ 24–25 (emphasis added). Javitz signed and accepted the offer, and began employment on August 4, 2014.

As Director of Human Services, Javitz was responsible for—among other duties—commencing the hiring process for vacant positions, negotiating contracts, dealing with employee complaints, responding to grievances, conducting investigations, and attending meetings. **AI 55, 58, ¶¶ 12, 27**. Once she began work, Javitz participated in two investigatory meetings with the American Federation of State, County, and Municipal Employees ("AFSCME"), which eventually resulted in ASFSCME filing an unfair labor practices suit in March 2015. **AI 58 at ¶ 30.**

### A.   Javitz's Allegations of Wiretapping

---

[1]    AI refers to Appendix Volume I, and so AII, AIII, and AIV refer to Appendix Volumes II, III, and IV, respectively.

Javitz claimed that a document filed in the ASFSCME lawsuit was a transcript of the investigatory meetings in which she participated. She suspected that a specific county employee, AFSCME union representative Paula Schnelly, had recorded the meeting without Javitz's consent—a crime under 18 Pa. Cons. Stat. § 5703. **AIII 56, 60, 67, 76.**

Javitz reported her concern to her supervisor, David Parsnik, who agreed that the meeting may have been recorded. **AI 59, ¶ 31.** The two met with the District Attorney, who indicated that she would refer the matter to the Office of the Attorney General due to a conflict of interest. *Id.* **at ¶ 33.** Javitz claims that the County Manager, Robert Lawton, intervened and instructed the District Attorney to drop the matter, which Defendants deny. **AIII 78.**

After reporting the matter, Javitz followed up with Parsnik and the County Solicitor about the status of the investigation multiple times. **AI 59–60, ¶ 35.**

After making this report to the District Attorney, Javitz alleges that county employees retaliated against her. She claims that her supervisor assigned work directly to her subordinates and cut her out of those and other assignments for which Javitz would have otherwise been responsible. **AIII 85–86.** She also cites her office's relocation in May of 2015 as an example, but the move was planned prior to her hiring. **AI 61, ¶ 44.**

Finally, on October 26, 2015, Javitz was fired. **AIII 92–95.** She was given no reason for her termination. *Id.* She requested a *Loudermill* hearing, but was denied. *Id.*

### B. County's Response

The County maintains that Javitz was fired because of her "conduct toward [county] unions, her refusal to follow through with hiring a Human Resources Business Partner [(a

4

vacant position in the Human Resources Department during Plaintiff's County employment)], her failure to initiate policies, procedures and initiatives as directed[,] and [her handling of] issues with the employment application for a candidate for an assistant public defender position." AI 67, ¶ 70.

### C. District Court Proceedings

Javitz filed a complaint alleging, *inter alia*, a 42 U.S.C. § 1983 claim for violation of her procedural due process rights under the Fourteenth Amendment and for retaliation in violation of her First Amendment rights. **AI 7.** The District Court granted summary judgment in favor of the Defendants. First, the District Court found that Javitz did not have a property interest in her employment, and, thus, her termination did not violate her Fourteenth Amendment due process rights. Second, the Court found that Javitz was not protected under the First Amendment because her speech was that of a public employee, and not a private citizen, stating: "[Javitz] became aware of the information through her employment, was encouraged to report the information by the policies of her employer, and reported the information only to other County employees." AI 28. Thus, because Javitz spoke as a public employee and not a private citizen, the Constitution does not protect her from employer discipline, or, as in this case, her termination. ***Id.***

### II.

The District Court had jurisdiction pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over a district court order granting summary judgment. *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018).

## III.

## A.

We first consider Javitz's due process claim. The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV § 1. "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest . . . [is] encompassed within the [F]ourteenth [A]mendment's protection of life, liberty, or property.'" *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005) (citation omitted) (alterations in original). "To have a property interest in a job [ ] . . . a person must have . . . a legitimate entitlement to such continued employment." *Id.* (citation omitted). State law determines whether a person is entitled to a property interest in their government job. *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

In Pennsylvania, employees are at-will by default; a contract or applicable state law must be shown to rebut this default status and establish a property right. *See Stumpp v. Stroudsburg Mun Auth.*, 658 A.2d 333, 334–35 (Pa. 1995). In Luzerne County, Career Service Employees may only be fired for just cause, but Exempt Level Employees are employed at-will. The Luzerne County Charter is silent as to whether Javitz's position was Career Service or Exempt Level.

Given that the County legislation is silent on this issue, we review the terms of Javitz's employment to determine whether she was an Exempt Level Employee. The offer letter describes her position as "Exempt," and describes her employment as "At Will." AI 18–19. Given this evidence, we agree with the District Court: Javitz was hired

6

as an Exempt Level Employee, did not have a property interest in her government position, and thus her termination was not entitled to Fourteenth Amendment due process protection. AI 20. Therefore, we will affirm the District Court's ruling concerning Javitz's due process claim.

**B.**

We next turn to Javitz's First Amendment retaliation claim. "To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (internal quotation marks and citation omitted) (alteration in original). Because the District Court ruled that Javitz's speech was not protected speech—by finding that she spoke as a public employee and not a private citizen—we focus only on the first factor.

When determining whether an individual spoke as a public employee versus a private citizen, three Supreme Court cases guide our analysis. First, in *Pickering v. Board of Education*, 391 U.S. 563 (1968), the Court instructed that we determine if the employee spoke as a citizen on a matter of public concern, and if so, whether the government employer was justified in treating the employee differently from any other member of the general public. *Id.* at 568. This initial inquiry has become known as the *Pickering* balancing test.

7

Second, in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), the Supreme Court specified this inquiry by holding that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421. This rule is based on administrative efficiency and acts to keep every workplace dispute from becoming a federal case. *See id.* at 418. This rule, however, is balanced with the Court's acknowledgement that if "employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." *Id.* at 419 (citation omitted).

Third, and most recently, the Court decided *Lane v. Franks*, 573 U.S. 228 (2014). The *Lane* Court focused on the nexus between the employee's speech and his/her job duties, stating that "the mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech." *Id.* at 240. Thus, the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.*

This Circuit has followed these cases and, when appropriate, has focused its inquiry on whether a public employee's speech was informed by or the result of his or her primary job duties. For example, in *Flora v. County of Luzerne*, 776 F.3d 169 (3d Cir. 2015), the Acting Chief Public Defender alleged that his employer chose not to promote him because of his speech—specifically, for his efforts to secure funding for the Office of

8

the Public Defender in a class action lawsuit and for publicly reporting the county's noncompliance with a Pennsylvania Supreme Court expungement order relating to the 2008 "Kids for Cash" scandal. *Id.* at 172–74. The District Court dismissed the complaint, finding that Flora's speech related to his official duties as Chief Public Defender, and thus was not protected speech. *Id.* at 174. This Court reversed, holding that "[w]hile certain statements in Flora's complaint do suggest that the speech at issue bore some relation to his job duties and may have, indirectly, benefitted his clients, that does not bring the speech within the realm of his ordinary job duties . . . [t]o view it otherwise would unduly restrict First Amendment rights, because reporting malfeasance or misfeasance will regularly benefit an employee in the execution of his job duties by, presumably, removing impediments to proper government functioning." *Id.* at 180 (citation omitted).

In *Dougherty v. School District of Philadelphia*, 772 F.3d 979 (3d Cir. 2014), a former employee with the School District of Philadelphia was terminated after contacting the local newspaper regarding alleged business misconduct by the Superintendent. *Id.* at 983–84. He filed an action alleging First Amendment retaliation and was successful at the District Court. *Id.* at 984–85. On appeal, the school district argued that Dougherty's speech was that of an employee, because "the content of [his] speech was gained from 'special knowledge' and 'experience' [and that] his speech 'owes its existence to' his professional duties." *Id.* 989. We found this argument unavailing, emphasizing that "whether an employee's speech 'concern[s] the subject matter of [his] employment' is 'nondispositive.'" *Id.* (citing *Garcetti*, 547 U.S. at 421). Rather, "[u]nder *Lane*, [we

9

determined] that Dougherty's report to [the newspaper] was not made pursuant to his official job duties . . . [and was] not foreclosed merely because the subject matter of the speech concern[ed] or relate[d] to those duties." *Id.* at 990.

Again, in *De Ritis v. McGarrigle*, 861 F.3d 444 (3d Cir. 2017), we distinguished citizen speech from employee speech by focusing on the primary job duties of the plaintiff. In *De Ritis*, we held that a public defender's rumormongering about his perceived demotion to judges and attorneys while in the courtroom was not protected speech, because as an attorney, rapport-building conversations with judges and other attorneys just before or after a case proceeding are "part and parcel of [a public defender's] ordinary job duties—not citizen speech." *Id.* at 453–54 (citation omitted). We distinguished, however, out-of-court conversations De Rittis had with the county solicitor and chair of the county council, both high-ranking county officials that De Ritis had access to as a result of his work. We held those conversations to be citizen speech, because these out-of-court conversations, possible only by virtue of his employment, were not "'part of the work [De Ritis] was paid to perform on an ordinary basis.'" *Id.* at 454 (quoting *Flora*, 776 F.3d at 180) (alteration in original).

## C.

This case is analogous to *Flora, Dougherty,* and *De Ritis*. As in those cases, our threshold inquiry is whether Javitz spoke as a citizen or a public employee, and as such, whether her speech was either "ordinarily within the scope of [her] duties," or simply relating to those duties. *Lane*, 573 U.S. at 240. *Who* Javitz spoke to, *what* she spoke

10

about, and *why* she spoke at all each fall outside the scope of her primary job duties and evidence citizen speech.

**1.**

Here, as in *De Ritis*, Javitz had access to high-ranking county officials by virtue of her job as the Human Resources Director. Javitz had the ability to communicate and interface with these individuals in a manner that someone not employed by the county, and someone without the position of Human Resources Director, would have. But access to these individuals is secondary to our citizen speech inquiry—we must focus on whether Javitz interfacing with them was a part of her primary job duties.

The District Court found that it was "by virtue of [Javitz's] position as a public employee that [she] was allowed to make the speech in the mode and manner in which she did; that is, accompanied by her supervisor and director to the District Attorney." *Javitz v. Luzerne Cty.*, No. 3:15-CV-2443, 2018 WL 1545589, at *10 (M.D. Pa. Mar. 29, 2018). This reasoning does not follow our precedent—unless the mode and manner of Javitz's speech was "part of the work [she] was paid to perform on an ordinary basis[,]" the fact that she could easily contact the District Attorney by virtue of her employment does not support a finding that Javitz spoke as an employee and not a citizen. *De Ritis*, 861 F.3d at 454 (quoting *Flora*, 776 F.3d at 180).

**2.**

The subject of Javitz's speech was also not within her ordinary job duties. Javitz reported a crime. But the record and the District Court found that nowhere in her job duties was she instructed to report crimes. Rather, the District Court placed significant

11

emphasis on the County Ethics Code which "encouraged [Javitz] to disclose any information which . . . she believe[d] evidence[ed] a violation of any law, rule or regulation." *Javitz*, 2018 WL 1545589, at \*9.

Here, our focus remains on whether Javitz spoke "pursuant to [her] official job duties." *Dougherty*, 772 F.3d at 990. Without more, relying on the County Ethics Code that merely encourages reporting wrongdoing is not enough to bring her reporting into the realm of her ordinary job duties. The District Court's emphasis on the suggestion by the County Ethics Code is misplaced. It is commonplace for ethics codes and employee handbooks to encourage reporting wrongdoing, and absent some formal job duty or responsibility, such encouragement is not enough to bring Javitz's reporting into the realm of her official duties—that is, the realm of employee speech.

**3.**

Lastly, the *why* of Javitz's reporting. "Speech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (internal quotations and citation omitted); *see also Connick v. Myers*, 461 U.S. 138, 146 (1983). In Pennsylvania, "telephonic interloping is illegal unless the individuals at both ends of the conversation agree that what they say to one another may be made public." *Commonwealth v. Murray*, 223 A.2d 102, 105 (Pa. 1966). Without such consent, recording another individual becomes a class 3 felony. *See* 18 Pa. Cons. Stat. § 5703.

12

We have held that "an internal investigation into the alleged criminal actions of public employees falls squarely within the core public speech delineated in *Connick*." *Baldassare v. State of N.J.*, 250 F.3d 188, 196–97 (3d Cir. 2001) (internal quotation marks and citations omitted). Javitz likely had some personal motivations for following up on the status of the investigation—victims of crimes often do. But that does not remove her reporting to merely a "personal curiosity," as the District Court described. *Javitz*, 2018 WL 1545589, at *11. Because Javitz reported that she believed she was the victim of a crime, and because she followed up on the status of the investigation into that crime, she was speaking on a matter of public importance.

Our inquiry in this case has been a practical one. *De Ritis*, 861 F.3d at 453. Javitz found herself in a county role that placed her within reach of local authority figures. The position was accompanied with a County Ethics Code that encouraged reporting of wrongdoing. Javitz was allegedly the victim of a crime, which she reported. The crime, subsequent contact with local authority figures regarding that crime, and the lack of any formal duty to report that crime are evidence that she was not experiencing or acting within the primary functions of her employment. Thus, we hold that Javitz's speech was that of a citizen speaking to a matter of public concern.

**IV.**

For the foregoing reasons, we will affirm the District Court's ruling concerning Javitz's due process claim. We will, however, reverse its ruling regarding Javitz's First

Amendment retaliation claim and remand for further proceedings consistent with this opinion.