**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-1444

_____

BILL WILLIAMS

v.

CITY OF ALLENTOWN; KEITH MORRIS; ED PAWLOWSKI; GLEN
DORNEY; GAIL STRUSS; FIVE JOHN & FIVE JANE DOES

Keith Morris; Ed Pawlowski,
                                    Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-17-cv-04910)
District Judge: Chad F. Kenney

_____

Argued February 4, 2020

Before:  SHWARTZ, SCIRICA and RENDELL, Circuit Judges

(Opinion Filed: March 11, 2020)

Steven E. Hoffman [ARGUED]
John J. Buckley
Hoffman, Hlavac & Easterly
1605 North Cedar Crest Boulevard
Suite 517
Allentown, PA 18104

        *Counsel for Appellants*

Brian M. Puricelli [ARGUED]
Law Offices of Brian M. Puricelli
2721 Pickertown Road
Warrington, PA 18976

*Counsel for Appellee*

---

O P I N I O N*

---

**RENDELL**, <u>Circuit Judge</u>.

Appellants Keith Morris and Ed Pawlowski challenge the District Court's denial

of their motion to dismiss Appellee Bill Williams's § 1983 and § 1985(3) claims.

Appellants argue that they are entitled to qualified immunity for both claims.  For the

following reasons, we will affirm in part, reverse in part, and remand for further

proceedings consistent with this opinion.

## I.    BACKGROUND

Appellee Bill Williams began working for the City of Allentown as a police

officer in 2006.  Williams was promoted to Sergeant of the Youth Division in 2016.  In

this role, Williams was responsible for developing public programs for the City's youth

and improving recruitment efforts for the police force.[1]  Williams received several

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

[1] Williams includes the following non-exhaustive list of responsibilities in his complaint:
  (1)  Plan and implement a town hall-style forum for the City's youth,
  (2)  Establish and maintain staffing for crossing guards,
  (3)  Develop mentoring programs in the schools including Big Brothers and
       Big Sisters,
  (4)  Implement additional referral sources other than the courts for troubled

economic and non-economic benefits, including increased earnings, additional responsibilities, prestige, a steady daytime work schedule, and use of the city-owned car. As the only Sergeant in the Youth Division, Williams was in command of the other officers and detectives within the division.

In January 2017, one of Williams's co-workers in the Youth Division approached Williams off-duty, seeking advice on whether he could run for political office. The co-worker told Williams that he was considering whether to run against then-Mayor Pawlowski in an upcoming election and "asked [Williams] for aid, and to provide an opinion regarding any potential conflicts with employment by running for political office." A. 168. Williams saw "no basis" for why he could not run against Pawlowski. A. 169. Williams alleges that he "merely provided his personal opinion" to the co-worker since he had no duty to advise an employee on whether he could run for political office. A. 168. Williams further alleges that he "affiliated with the co-employee and his political views and party." A. 169.

The co-worker approached Williams a second time in February 2017—again off-duty—and told Williams that he was close to "going public." A. 169. During that conversation, Williams suggested that the co-worker speak with then-Chief of Police Morris about his decision to run for mayor. The co-worker subsequently had several

---

Youth,
   (5) Develop and implement a merit-based matrix system for the selection of new officers to the Youth Division, and
   (6) Pioneer and develop a new polygraph process for police applicants
A. 167–68.

meetings with Morris and "told Morris of [Williams's] affiliation and aid." *Id*. Williams alleges that during these meetings, Morris "used language that made the co-worker feel threatened and there would be reprisal or retaliation if the worker ran for the Mayor's Office." *Id*.

On February 23, 2017, the co-worker gave a televised speech announcing his candidacy for mayor. The following week, Williams was ordered to appear before Morris, who informed him that he was being reassigned to work as a patrol officer for the night shift. Williams alleges that he requested transfer to a vacant day shift patrol rotation, which Morris denied without explanation. Williams alleges that prior to his transfer from the Youth Division, he was ranked as "outstanding" and had not received any complaints from his supervisors. A. 177. In fact, Williams alleges that Morris told him that he was "doing a good job" and was a "credit to the department." A. 178.

Williams filed several claims against Appellants, including a § 1983 First Amendment retaliation claim and a § 1985(3) conspiracy claim.[2] In response, Appellants filed a motion to dismiss Williams's complaint for failure to state a claim and on qualified immunity grounds. The District Court denied the motion to dismiss as to Williams's § 1983 First Amendment Retaliation claim and his § 1985(3) conspiracy claim and ruled that Morris and Pawlowski were not entitled to qualified immunity. This appeal followed.

---

[2] Williams also alleged a pre-deprivation due process claim (Count II) and a *Monell* municipal liability claim (Count III). These claims are not at issue on appeal.

## II.     DISCUSSION

### A.     Jurisdiction

As a threshold matter, we must determine whether we have jurisdiction over this interlocutory appeal.  Under the collateral order doctrine, we have jurisdiction over a district court's order denying qualified immunity "to the extent that it turns on questions of law." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).  "[T]o overcome the assertion of qualified immunity at the motion to dismiss stage, a plaintiff must sufficiently plead not only a violation of a constitutional or statutory right, but also a violation of a clearly established one." *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012).  On a motion to dismiss, we "consider[] only the allegations contained within the four corners of [the] complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 674 (2009).  We exercise plenary review over a district court's denial of qualified immunity. *See Argueta v. U.S. Immigration & Customs Enf't*, 643 F.3d 60, 69 (3d Cir. 2011).

We have jurisdiction to review the District Court's denial of qualified immunity because it concerns a question of law, namely, whether Williams's complaint sufficiently alleges violations of a constitutional right that is based on clearly established law.  When reviewing the District Court's denial of qualified immunity based on the pleadings, we must "accept [the plaintiff's] allegations as true and afford him the benefit of all reasonable inferences." *Larsen v. Senate of Com. of Pa.*, 154 F.3d 82, 87 (3d Cir. 1998).

Accepting Williams's factual allegations as true, the District Court determined that Williams alleged a First Amendment retaliation claim under § 1983, and ruled that Appellants were not entitled to qualified immunity.  The District Court also ruled that

5

Williams had alleged a violation under § 1985(3) because it had already "maintained the First Amendment retaliation claim," and it could plausibly be inferred that Appellants conspired against Williams. A. 30. In doing so, the District Court improperly analyzed Williams's § 1985(3) conspiracy claim as a § 1983 conspiracy claim and erred in denying Appellants qualified immunity for that claim. We will discuss each claim in turn.

**B.    Section 1983 First Amendment Retaliation Claim**

Williams asserts a § 1983 First Amendment retaliation claim, alleging violations of his right to free speech and right to freedom of association.[3] A § 1983 First Amendment retaliation claim asserting a violation of the right to free speech requires a plaintiff to prove that "(1) he engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link existed between the constitutionally protected conduct and the retaliatory action." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (internal quotation marks and citation omitted). Similarly, a § 1983 First Amendment retaliation claim asserting a violation of the right to freedom of association requires a showing that government officials "were engaged in constitutionally protected conduct and that the conduct was a 'substantial' or 'motivating factor' in the government employer's decision." *Rode v. Dellarciprete*, 845 F.2d 1195, 1200 (3d Cir. 1988) (citation omitted).

---

[3] Williams lists these violations in one count as one First Amendment Retaliation claim under § 1983. *See* A. 173 ("Political Affiliation/Association/Speech Right").

Relying on the Supreme Court's opinion in *Garcetti v. Ceballos*, 547 U.S. 410 (2006), we have held that the First Amendment protects a public employee's speech when: "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241–42 (3d Cir. 2006). Since Williams's freedom of association claim is "linked closely" with his free speech claim—he faced retaliation because of his political association with the co-worker—both of Williams's retaliation claims are subject to the *Garcetti* test. *Gorum v. Sessoms*, 561 F.3d 179, 185 n.4 (3d Cir. 2009); *see also Sanguigni v. Pittsburgh Bd. of Pub. Educ.*, 968 F.2d 393, 400 (3d Cir. 1992) (applying the same test when an employee's freedom of association claim "implicate[s] associational rights in essentially the same way and to the same degree" as his free speech claim).

The issue before the District Court, and before us, is whether Williams spoke to the co-worker as a private citizen. To make this determination, the Supreme Court has instructed reviewing courts to consider whether "the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). We have conducted a practical inquiry to determine whether an employee's statements "fall outside the scope of her primary job duties and evidence[d] citizen speech." *Javitz v. County of Luzerne*, 940 F.3d 858, 865 (3d Cir. 2019); *see also Flora v. County of Luzerne*, 776 F.3d 169, 180 ("While certain

7

statements in [the plaintiff's] complaint do suggest that the speech at issue bore some relation to his job . . . that does not bring the speech within the realm of his ordinary job duties."); *De Ritis v. McGarrigle*, 861 F.3d 444, 454 (3d Cir. 2017) (citizen speech exists when speech was not "part of the work [the employee] was paid to perform on an ordinary basis").

Here, Williams alleges that his conversations with the co-worker were made "off duty" and that he offered his "personal opinion" to the co-worker. A. 169; A 168. Williams asserts that he did not have a duty "to give advice and/or allow an employee to run for political office." A. 167. Appellants argue that Williams's conversations to the co-worker were made "pursuant to his job duties and related to his work" because Williams provided advice to a subordinate "relat[ing] to the City's rules and policies surrounding their duties as police officers." Appellants Br. 21–22. Not only does this argument contradict Williams's factual allegations, it does not fit within the contours of our controlling precedent.

If we construed Williams's official duties to include all speech related to the City's rules and policies, we would be permitting the type of "excessively broad job descriptions" that the Supreme Court cautioned against in *Garcetti*. 547 U.S. at 424. Accepting Williams's factual allegations as true, Williams was not "employed" to give advice to employees about City policies, nor was his speech "part of the work he was paid to perform on an ordinary basis." *Flora*, 776 F.3d at 180. We agree with the District Court's determination that, based on the allegations of his complaint, which have

8

not been challenged or controverted by Appellants, Williams was speaking as a private citizen on a matter of public concern.[4]

Appellants also argue that Williams has not stated a freedom of association claim because they never spoke to Williams about his affiliation with the co-worker, and the complaint "does not even allege that he is a member of a given political party." Appellants Br. 24. These arguments are unpersuasive. Williams alleges that he "affiliated with the co-employee and his political views and party." A. 169. The co-worker then informed Morris of Williams's "affiliation and aid" and, according to Williams, Morris insinuated that there would be "retaliation" and "reprisal." *Id*. As the District Court previously held, Williams has sufficiently alleged First Amendment violations for freedom of speech and association under § 1983.

Williams must also allege that his right to speech and association pursuant to the First Amendment was clearly established. A right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). Clearly established does not mean that "the very action in question has previously been held unlawful." *Hope v. Pelzer,* 536 U.S. 730, 739 (2002). Rather, "the appropriate

---

[4] During argument, Appellants asserted that they were unable to offer any documentation which would contradict Williams's factual allegations related to his job duties. Although this is true for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), Appellants were free to file a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Under a 12(c) motion, Appellants could have included attachments to their answer, including, for example, documents related Williams's official job responsibilities.

question is the objective inquiry whether a reasonable officer could have believed that [his actions were] lawful." *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citation omitted).

The Supreme Court has clearly established that a government employer cannot retaliate against an employee when he speaks as a private citizen or associates with a political candidate. *Heffernan v. City of Paterson*, *N.J.*, 136 S. Ct. 1412, 1417 (2016); *see also Elrod v. Burns*, 427 U.S. 347, 359 (1976) (conditioning public employment on support for a political party or particular candidate inhibits the rights guaranteed by the First Amendment); *Branti v. Finkel*, 445 U.S. 507, 519–520 (1980) (terminating employment based on political association violates the First Amendment). Here, no officer could reasonably believe that they could lawfully retaliate against Williams because of his political affiliation or support of the co-worker. Accordingly, Appellants are not entitled to qualified immunity under § 1983 at this stage.[5]

## C.    Section 1985(3) Conspiracy Claim

The District Court assumed that Williams's § 1985(3) claim was nothing more than a conspiracy to retaliate against Williams under § 1983 and, as a result, erred in denying Appellants qualified immunity. To state a conspiracy claim under § 1985(3), a plaintiff must allege that the defendants were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus . . . ." *Griffin v.*

---

[5] Although Appellants are not entitled to qualified immunity at the motion to dismiss stage, this issue "may well lend itself to resolution at summary judgment." *Hill*, 455 F.3d at 245. As the District Court rightly noted, Appellants are not foreclosed from raising this argument again at a later stage in the proceedings should they adduce evidence that controverts Williams's allegations.

*Breckinridge*, 403 U.S. 88, 102 (1971). In *Farber v. City of Paterson*, 440 F.3d 131, 143 (3d Cir. 2006), we held that "§ 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation."

Here, Williams has not alleged that Appellants engaged in any sort of racial or otherwise class-based invidiously discriminatory animus.[6] Williams only alleges that Appellants took steps in furtherance of their agreement to "retaliate against Williams for his constitutionally protected free speech, associational and political affiliation rights." Appellee Br. 14. This is insufficient to state a claim under § 1985(3) and, accordingly, Appellants are entitled to qualified immunity for this claim.

## III.    CONCLUSION

For the foregoing reasons, we will affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

---

[6] During argument, Williams's counsel conceded that Williams's allegations were devoid of any racial or class-based discriminatory animus.