**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2314

_____

DERRICK JACOBS,
                                        Appellant

v.

CITY OF PHILADELPHIA; PHILADELPHIA DISTRICT ATTORNEY'S OFFICE;
LAWRENCE S. KRASNER; TRACY TRIPP

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-04616)
District Judge: Honorable Harvey Bartle, III

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on May 6, 2022

Before: KRAUSE, BIBAS, and SCIRICA, Circuit Judges

(Opinion filed: June 1, 2022)

_____

———————

OPINION<sup>*</sup>

———————

PER CURIAM

Derrick Jacobs appeals from an order dismissing his complaint under Fed. R. Civ. P. 12(b)(6). As we did in Jacobs's prior appeal in this matter, see Jacobs v. City of Phila., 836 F. App'x 120 (3d Cir. 2020), we will affirm in part, vacate in part, and remand for further proceedings.

I.

Jacobs was or has been a detective with the Philadelphia Police Department for over 20 years. (His current employment status is disputed but is not relevant to this appeal.) Jacobs was assigned to the OISI Unit, which investigates what the department calls "officer-in-volved shootings." During Jacobs's time in that unit, he participated in an investigation into a fatal shooting involving police officer Ryan Pownall. Pownall has been indicted on charges arising from that shooting, and those charges are pending. Jacobs believes that the charges are unfounded, and his claims in this lawsuit relate primarily to his expressions of that belief.

Jacobs's initial complaint in this matter asserted three claims that are relevant here. The first was a First Amendment retaliation claim under 42 U.S.C. § 1983 against Tracy Tripp, the Assistant District Attorney who obtained Pownall's indictment. Jacobs claimed that his

———————

<sup>*</sup> This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

review of the Pownall grand jury presentment and his participation in the preceding investigation led him to conclude that Tripp knowingly presented false evidence to the grand jury in order to obtain Pownall's indictment. According to Jacobs, he then spoke with counsel to discuss how to "expose" Tripp's alleged wrongdoing. He claimed that Tripp learned of his consultation with counsel and then retaliated by investigating him, threatening him, and then filing baseless charges against him for leaking grand jury material (charges which Tripp later withdrew). Jacobs's second and third claims were a § 1983 conspiracy claim against Tripp and other defendants and a state-law claim under Pennsylvania's whistleblower statute.

On the defendants' Rule 12(b)(6) motion, the District Court dismissed Jacobs's federal claims with prejudice and declined to exercise supplemental jurisdiction over his state-law claim. We vacated these rulings and remanded for the court to consider allowing Jacobs to amend his retaliation claim. See Jacobs, 836 F. App'x at 122-23.

Thereafter, Jacobs filed with the District Court what he claims to have intended as a new civil action containing both his previous claims as well as new claims against new defendants. The court treated Jacobs's new complaint as an amended complaint and docketed it in this matter. The court also allowed Jacobs to amend his complaint twice more, which culminated in a Fourth Amended Complaint.[1]

---

[1] We refer to this version of Jacobs's complaint as his "complaint." On appeal, Jacobs challenges the District Court's decision to treat his new complaint as an amended complaint instead of a new civil action. But Jacobs was not prejudiced because the court let him assert both his old claims and his new claims and allowed two more amendments.

Among Jacobs's new claims was another First Amendment retaliation claim against certain employees of the Philadelphia Police Department (the "PPD defendants").[2] Jacobs claimed that, on January 18, 2020, he appeared on a podcast called <u>Search Warrant: Clear and Present Danger</u> to discuss this lawsuit and his allegations about Tripp. He further claimed that, four days later, the PPD defendants began retaliating against him for that appearance by investigating and ultimately bringing disciplinary charges against him. Those charges apparently remain unresolved.

As before, the defendants filed a Rule 12(b)(6) motion to dismiss Jacobs's complaint and the District Court dismissed his federal claims with prejudice and declined to exercise supplemental jurisdiction over his state-law claim. Jacobs appeals.[3]

II.

We again will affirm in part, vacate in part, and remand. We will affirm many of the District Court's rulings,[4] but we will vacate and remand on four of Jacobs's claims.

---

[2] These and the other new defendants do not appear in the District Court's case caption and thus do not appear in ours. <u>See</u> Fed. R. App. P. 12(a).

[3] We have jurisdiction under 28 U.S.C. § 1291. Our review of dismissals under Rule 12(b)(6) is plenary. <u>See</u> <u>Black v. Montgomery County</u>, 835 F.3d 358, 364 (3d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Id.</u> (quotation marks omitted).

[4] We will affirm the dismissal of Jacobs's due process and municipal-liability claims for the reasons explained by the District Court. We also will affirm as to all other claims and issues that Jacobs raises on appeal except as discussed in this opinion. To the extent that Jacobs's complaint can be read to assert claims that the District Court did not address, Jacobs has forfeited those claims by not arguing them on appeal.

A.

First, we will vacate in part the dismissal of Jacobs's First Amendment retaliation claim against Tripp. To plead a § 1983 retaliation claim, a plaintiff must allege: (1) that he or she engaged in constitutionally protected conduct; (2) that the defendant took action sufficient to deter an ordinary person from engaging in such conduct; and (3) a causal connection between the two. See Palardy v. Township of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018). The District Court previously dismissed this claim on the ground that Jacobs did not allege protected speech, but we remanded for further proceedings on this claim. See Jacobs, 836 F. App'x at 121-22.[5] On remand, the defendants did not seek dismissal on any of the elements of a retaliation claim. Instead, they sought dismissal on the sole ground that Tripp is entitled to absolute prosecutorial immunity. The court agreed and dismissed this claim on that sole basis.

That ruling was correct as to Jacobs's allegations that Tripp acted wrongfully in her prosecutorial capacity, including by bringing false charges and supporting them with false and illegally obtained evidence. See Weimer v. County of Fayette, 972 F.3d 177, 187 (3d Cir. 2020); Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020). That is so even if, as Jacobs alleges, those actions were retaliatory, malicious, and unsupported by probable cause. See Buckley v. Fitzsimmons, 509 U.S. 259, 274 n.5 (1993); Kulwicki v. Dawson, 969 F.2d 1454, 1463-65 (3d Cir. 1992).

---

[5] In doing so, we noted defendants' concession that Jacobs's consultation with counsel constituted a "potential form of speech," Jacobs, 836 F. App'x at 122, but we did not decide the issue, see id. at 122 n.2, and the District Court did not decide it on remand.

But as Jacobs argues, he also alleged that Tripp retaliated against him in her non-prosecutorial capacity. Jacobs alleged that, when Tripp learned of his consultation with counsel, she ordered his superior, defendant Hendershot, to investigate and divulge the substance of Jacobs's consultation with counsel and threatened to prosecute Jacobs's entire unit. (Compl., ECF No. 29, at 8 ¶¶ 13-14, 49 ¶ 320.) Jacobs further alleged that Hendershot carried out those orders and told him that Tripp was going to prosecute him for speaking with counsel. (Id. at 8-9 ¶¶ 15-19, 49 ¶¶ 321-322).

These allegations can be read to allege that Tripp attempted to intimidate Jacobs by investigating and threatening him. Tripp may not be entitled to absolute immunity for these alleged non-prosecutorial functions. See Weimer, 972 F.3d at 187-89; Fogle, 957 F.3d at 160, 162, 164.[6] Instead, such conduct may be subject to at most qualified immunity. See Weimer, 972 F.3d at 190. Tripp has not argued that she is entitled to qualified immunity on this claim, and she has not raised any other basis to dismiss it. Thus, we will remand for further proceedings on this claim against Tripp.[7]

---

[6] We say "may not" because a denial of absolute immunity at the pleading stage is not conclusive and can be revisited later in the litigation as more facts come to light. See Fogel, 957 F.3d at 162 n.14; Kulwicki, 969 F.2d at 1466.

[7] Jacobs also asserts this claim against Philadelphia District Attorney Lawrence Krasner. But Jacobs, despite numerous amendments, has not alleged facts plausibly suggesting that Krasner was personally involved as required for claims under § 1983. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Jacobs did allege that Hendershot was personally involved, but he does not argue that he asserted this claim against Hendershot or that the District Court erred in dismissing it to that extent. Thus, we remand this claim as to Tripp only. Hendershot remains a defendant on Jacobs's § 1983 conspiracy claim as discussed infra.

B.

Second, we will vacate the dismissal of Jacobs's First Amendment retaliation claims against three of the PPD defendants, defendants Hendershot, Wilson, and Pace. Jacobs claims that, after he appeared on a podcast to discuss this lawsuit and his allegations about Tripp, these defendants retaliated by investigating him and bringing disciplinary charges against him. (Compl., ECF No. 29, at 19-22 ¶¶ 89-121.)

The District Court dismissed this claim on the sole ground that Jacobs's speech on the podcast was not protected by the First Amendment under the framework that governs speech by public employees. Under that framework, the First Amendment protects public employee speech if: (1) the employee spoke as a citizen rather than an employee; (2) the speech involved a matter of public concern; and (3) the public employer lacked an adequate justification for burdening that speech under the balancing test adopted in Pickering v. Board of Education, 391 U.S. 563 (1968). See Dougherty v. Sch. Dist. of Phila., 772 F.3d 979, 987 (3d Cir. 2014).

The District Court held that Jacobs's speech on the podcast was not protected because (1) he spoke as an employee rather than a citizen, and (2) defendants had an adequate justification under Pickering. Defendants do not defend the first ruling, which was contrary to precedent.[8] The second ruling was premature.

---

[8] The District Court held that, under Garcetti v. Ceballos, 547 U.S. 410 (2006), Jacobs spoke as an employee because his speech related to matters that he learned while performing his official job duties. But the dispositive question under Garcetti is not whether the speech related to the employee's job duties but whether those duties included engaging in the speech itself. See Lane v. Franks, 573 U.S. 228, 239-40 (2014); Javitz v. Cnty. of Luzerne, 940 F.3d 858, 864-65 (3d Cir. 2019); Flora v. Cnty. of Luzerne, 776 F.3d 169, 178-

7

Under <u>Pickering</u>, a public employee's speech as a citizen on a matter of public concern[9] is protected unless the employer's interests in restricting the speech outweigh the employee's and the public's interest in that speech. <u>See</u> <u>Munroe v. Cent. Bucks Sch. Dist.</u>, 805 F.3d 454, 472 (3d Cir. 2015). The employer bears the burden on this issue. <u>See</u> <u>Baldassare v. State of New Jersey</u>, 250 F.3d 188, 198 (3d Cir. 2001). Determining whether the employer has carried it entails "a fact-intensive inquiry that requires consideration of the entire record[.]" <u>Munroe</u>, 805 F.3d at 472 (quotation marks omitted). Thus, "the <u>Pickering</u> balancing test … does not easily lend itself to dismissal on a Rule 12(b)(6) motion." <u>Decotiis v. Whittemore</u>, 635 F.3d 22, 35 n.15 (1st Cir. 2011).

In this case, the District Court did not identify either Jacobs's actual speech[10] or any interest that he or the public might have had in that speech. Instead, the court referred in

79 (3d Cir. 2015); <u>Dougherty</u>, 772 F.3d at 988-90. Jacobs does not allege that his duties included appearing on podcasts or engaging in other forms of public speech, and there has been no suggestion that they did.

[9] The defendants have not argued that Jacobs's speech did not involve a matter of public concern, and the District Court did not address that issue. We thus do not reach it either, though we note that Jacobs's speech likely qualifies for the reasons discussed <u>infra</u>.

[10] Jacobs alleged generally what he discussed on the podcast, but he did not allege any of his actual statements or attach a transcript or recording of the podcast to his complaint. The defendants also did not ask the District Court to consider the actual podcast. Thus, we do not necessarily fault the court for applying <u>Pickering</u> without first identifying Jacobs's actual speech. <u>See</u> <u>Jefferson v. Ambroz</u>, 90 F.3d 1291, 1296 (7th Cir. 1996) (holding that, in order to apply <u>Pickering</u>, courts sometimes "need only know the gist of what the employee said, not the precise words he used to express himself"). Still, "precisely what the plaintiff said … could affect the [<u>Pickering</u>] analysis." <u>Deutsch v. Jordan</u>, 618 F.3d 1093, 1098 (10th Cir. 2010). Such may be the case here. The parties, however, have not asked us to consider the actual podcast either. Thus, we leave it to the District Court to consider Jacobs's actual speech on the podcast when and as appropriate on remand. <u>See</u> <u>Baldassare</u>, 250 F.3d at 198 (explaining that the burden to justify a restriction of speech under <u>Pickering</u> "varies depending upon the nature of the employee's expression") (quotation marks

8

passing to Jacobs's interest in discussing "his opinion" of the Pownall matter and the District Attorney's Office. That characterization was too narrow. Jacobs's complaint plausibly alleges that he discussed an informed accusation of official wrongdoing. "[T]he public's interest in exposing potential wrongdoing by public employees is especially powerful," and "[s]peech involving government impropriety occupies the highest rung of First Amendment protection." Baldassare, 250 F.3d at 198 (alternation in original) (quotation marks omitted). Jacobs alleges that he discussed other matters as well. Thus, Jacobs's allegations suggest that he and the public may have had a greater interest in his speech than the District Court allowed.

The District Court also could not properly determine on this record whether or how that speech threatened defendants' interests or whether those interests tipped the balance in defendants' favor. The court identified defendants' interest in promoting the work of the OISI Unit, but it did not specify how Jacobs's speech threatened that interest. That issue cannot be resolved on the face of Jacobs's complaint because he did not allege facts regarding the effect or potential effect of his speech on the unit's operations. Cf. Garza v. Escobar, 972 F.3d 721, 728 (5th Cir. 2020) (affirming judgment on the pleadings where District Attorney employee "plead[ed] her way into Pickering balancing"); Jefferson, 90 F.3d at 1296 (affirming Rule 12(b)(6) dismissal where probation officer "pleaded himself out of court" on the Pickering issue).

_____

omitted).

The same is true as to the other interests that defendants invoke on appeal, such as their interests in maintaining a close working relationship with the District Attorney's Office and the confidentiality of grand jury material. We do not doubt that defendants have such interests or that Jacobs's speech implicated them. To the contrary, we have recognized that similar interests "merit substantial protection, and any risk of departmental injury or disruption weighs heavily under the <u>Pickering</u> balancing test." <u>Green v. Phila. Hous. Auth.</u>, 105 F.3d 882, 888 (3d Cir. 1997). But even assuming that Jacobs's speech threatened those interests, "[t]he balancing test articulated in <u>Pickering</u> is truly a balancing test, with office disruption or breached confidences being only weights on the scales." <u>Watters v. City of Phila.</u>, 55 F.3d 886, 895 (3d Cir. 1995) (alteration in original) (quotation marks omitted). Thus, such interests do not always carry the day. <u>See</u> <u>Baldassare</u>, 250 F.3d at 198-200; <u>Gasparinetti v. Kerr</u>, 568 F.2d 311, 315-17 (3d Cir. 1977). Whether they do in this case cannot be determined on the face of Jacobs's complaint.[11]

---

[11] Defendants rely on cases in which we have struck the balance in favor of similar interests, but we decided those cases on more developed records. <u>See, e.g.</u>, <u>Green</u>, 105 F.3d at 885 (trial record); <u>Sprague v. Fitzpatrick</u>, 546 F.2d 560, 562-63 (3d Cir. 1976) (summary judgment record). Those cases also are factually distinct. The most similar is <u>Sprague</u>, in which we upheld the termination of an Assistant District Attorney who publicly criticized the District Attorney. We did so because the plaintiff's public criticism of his direct superior created an "irreparable breach of confidence" that "completely undermined" their working relationship. <u>Id.</u> at 565. In this case, by contrast, Jacobs's accusations of Tripp do not appear to relate to any of Jacobs's direct superiors or to anyone else employed by the OISI Unit or the PPD. Nor do his allegations otherwise reveal whether or how those accusations threatened the operations of the OISI Unit or the PPD. Thus, on this record, this case is not analogous to <u>Sprague</u> as defendants argue. Defendants have not otherwise cited any authority supporting the Rule 12(b)(6) dismissal of a similar claim. The only such authority we have located involved circumstances not present here. <u>See, e.g.</u>, <u>Jefferson</u>, 90 F.3d at 1294-97 (affirming dismissal of retaliation claim by a probation officer who posed as a gang member on a radio show to criticize police and the courts and who "pleaded himself

Thus, we will vacate and remand on this claim too. We do so only as to those defendants whom Jacobs plausibly alleges were personally involved in this alleged retaliation—defendants Hendershot, Wilson, and Pace.

C.

Third, we will vacate the dismissal of Jacobs's § 1983 conspiracy claim. The District Court dismissed this claim on the sole ground that it was also dismissing Jacobs's underlying claims. That reasoning was partly insufficient[12] and, in any event, it does not survive our decision to remand the two claims discussed above.[13] Thus, we will vacate and remand as to this claim too. Once again, we do so only as to those defendants whom Jacobs plausibly alleges had some personal involvement in the alleged conspiracy. Those defendants are Tripp, Wilson, Hendershot, and Pace.

D.

Finally, we will vacate the dismissal of Jacobs's state-law whistleblower claim. The District Court declined to exercise supplemental jurisdiction over that claim because it

---

out of court" under Pickering by attaching materials that revealed how his speech threatened defendants' interests).

[12] The court dismissed Jacobs's retaliation claim against Tripp on prosecutorial immunity grounds without deciding whether Jacobs had alleged a constitutional violation. Dismissal of a claim on prosecutorial immunity grounds does not necessarily preclude a related conspiracy claim because, even if a prosecutor is personally immune, the prosecutor's actions can form the basis for a conspiracy claim against other defendants. See Rounseville v. Zahl, 13 F.3d 625, 633 (2d Cir. 1994).

[13] Defendants argue that Jacobs waived his conspiracy claim by failing to challenge the District Court's ruling on this claim. Jacobs, however, expressly argues that the court erred in dismissing his conspiracy claim because it also erred in dismissing his underlying claims. (Appellant's Br. at 21.)

11

dismissed Jacobs's federal claims. The court can revisit that issue and determine the proper defendants on this claim if and when appropriate on remand.

III.

For these reasons, we will vacate the judgment of the District Court as to the four claims and the defendants discussed above. As to all other claims, defendants, and issues, we will affirm. We emphasize the limited nature or our decision. We hold only that Jacobs has plausibly alleged enough to avoid dismissal of some of his claims as to some of the defendants at the pleading stage. We express no opinion on the merits of those claims, the truth of Jacobs's factual allegations, or any other matter not specifically addressed herein.[14]

---

[14] Our rulings do not turn on this issue, but Jacobs's motion to file a supplemental appendix is granted and defendants' motion to strike that appendix is denied.