**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1710
_____

MARCEL NICOLE INGRAM,
Appellant

v.

THE HONORABLE GEORGE DUNBAR, In his individual capacity; THE
HONORABLE ERIC DAVANZO, In his individual capacity; JOCOB SMELTZ, In his
individual capacity; JORDAN GOUKER, In his individual capacity; WILLIAM
SCHALLER, In his individual capacity; JILL VECCHIO, Esq., In her individual
capacity; CANDICE MITCHELL, In her individual capacity; LISA ZAUCHA, In her
individual capacity; ALICIA MCGHEE, In her individual capacity
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(Case No. 2-22-cv-1594)
District Judge: Honorable Marilyn J. Horan
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 30, 2024

Before: CHAGARES, *Chief Judge*, RESTREPO and FREEMAN, *Circuit Judges*

(Filed: April 10, 2024)
_____

OPINION[*]

_____

  [*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not
binding precedent.

RESTREPO, *Circuit Judge*.

Marcel Nicole Ingram was fired at the conclusion of a months-long workplace drama involving mysterious smells and inexplicable headaches, an unresponsive landlord, and a profanity-laden email. In federal court, Ms. Ingram sought to remedy alleged rights abuses, claiming First Amendment and statutory protections for her investigation of an office mold infestation that plagued her and her coworkers for the better part of a summer. But the District Court found Ms. Ingram's allegations implausible and dismissed her complaint. Because the District Court erred in granting the defendants' motion to dismiss, at least with respect to citizen speech, we will reverse and remand.

**I**[1]

In March 2020, the Pennsylvania House Republican Caucus ("PHRC") hired Ms. Ingram to serve as the district office manager for State Representative Eric Davanzo. The district office in question is in West Newton, Pennsylvania and is open to the public. Constituents are often present. Ms. Ingram worked in this role for two years.

Then, in May 2022, something quite literally started not smelling right. Ms. Ingram and a coworker "began sporadically smelling strong, foul odors" reminiscent of "raw chicken" while at work. App'x at 19, 30. The intense stench burned their eyes and caused

---

[1] We take the following facts alleged in Ms. Ingram's amended complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

headaches. Ms. Ingram voiced her concerns several times to Representative Davanzo, who each time referred her to the office landlord, Joyce Pawlik. But after several complaints, Ms. Pawlik claimed to be unable to locate the source of the miasma. For a month, Ms. Ingram's ailments were her only clues in the office mystery. Then, in June, Ms. Pawlik responded to a text message about the stink's "venge[ful]" return by suggesting that a leak in the building may be to blame. App'x at 20. Days later, Ms. Ingram observed water coming in through the floor of the office.

At an apparent dead end with Representative Davanzo and Ms. Pawlik, Ms. Ingram also emailed Lisa Zaucha, the Southwest Regional Coordinator of District Operations for the PHRC. Ms. Zaucha appears to have been responsible for hiring and supervising employees such as Ms. Ingram. For a month and a day, Ms. Ingram's request bore no fruit. At last, on July 7, Ms. Zaucha responded to follow up on the "mold situation." App'x at 20. When Ms. Ingram explained that the situation was very much still an issue, Ms. Zaucha forwarded their exchange to PHRC Senior Deputy Chief Counsel James Mann. Mr. Mann advised Ms. Zaucha to purchase an at-home mold test to assess the office. Ms. Zaucha forwarded this prescription back to Ms. Ingram, calling it "good advice" and offering to reimburse Ms. Ingram for the purchase. App'x at 21.

As instructed, Ms. Ingram purchased a test and, removing the cover from an air vent, soon discovered "a significant amount of a mold-like substance." App'x at 21. The test revealed that substance to be a mixture of Aspergillus/Penicillium and Stachybotrys, the

3

latter of which is the genus that includes black mold. The same day, Ms. Ingram reported her findings to Representative Davanzo "in order to protect herself, her colleagues, and Rep[resentative] Davanzo's constituents." App'x at 21. But when she did, Representative Davanzo bluntly asked: "Who the f— gave you permission to do this?" App'x at 21. The representative then wrote a profanity-laden email to PHRC staff and another Pennsylvania representative demanding that Ms. Ingram and Ms. Zaucha be fired. One week later, the PHRC did in fact fire Ms. Ingram, citing a "clash of personalities" with Representative Davanzo. App'x at 24. But in Ms. Ingram's termination letter, the PHRC stated that "issues previously discussed . . . by Lisa Zaucha and Representative Davanzo" were the cause of her termination, with no reference to any "clash of personalities." App'x at 24. Finally, in response to Ms. Ingram's unemployment filings, the PHRC reported "rule violations of its conduct/discipline and annual leave policies" as the causes for Ms. Ingram's termination. App'x at 24.

Ms. Ingram sued. She brought a claim under 42 U.S.C. § 1983 for violating her First Amendment rights, and she sought relief under the Pennsylvania Whistleblower Law, 43 Pa. Stat. Ann. § 1421 *et seq.* The PHRC and the individual defendants argued that Ms. Ingram had failed to state a claim and moved to dismiss the lawsuit. On that motion, the District Court found dispositive that Ms. Ingram's actions "occurred within the context of [her] job as Representative Davanzo's District Office Manager" and consequently held that Ms. Ingram's speech did not fall within the protective ambit of the First Amendment.

4

*Ingram v. Dunbar*, No. 2:22-cv-1594, 2023 WL 2931943, at \*4 (W.D. Pa. Apr. 13, 2023). And because, after dismissing her First Amendment claim, no federal question remained, the District Court declined to hear Ms. Ingram's state law claim. *Id*. Ms. Ingram's case was therefore dismissed. *Id*. She now asks that we review that decision.

**II**[2]

Under Federal Rule of Civil Procedure 12(b)(6), "a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff's claims lack facial plausibility." *Fenico v. City of Philadelphia*, 70 F.4th 151, 161 (3d Cir. 2023) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011). Relatedly, dismissal for failure to state a claim is proper if a party fails to allege sufficient factual matter, which, if accepted as true, could "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Meanwhile, "[t]o prevail on a First Amendment [employment] retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) [she] engaged in constitutionally protected conduct, (2) the defendant engaged in retaliatory action sufficient to deter a person of ordinary firmness from exercising [her] constitutional rights, and (3) a causal link [existed] between the constitutionally protected conduct and the retaliatory action."

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of a motion to dismiss de novo. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

*Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (internal quotation marks and footnote omitted). Because the District Court did not reach the second and third prongs of that test, the sole issue before us is whether Ms. Ingram's conduct was protected by the First Amendment.

Although public employees retain their First Amendment rights in the public workplace, those rights are only a partial shield. When public employees make statements pursuant to their official duties, the Constitution does not protect them from being fired, demoted, or similarly reprimanded as a result. *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). But, generally, the First Amendment *does* protect public employees' rights to speak as citizens on matters of public concern. *Id.* at 417. If a government employee speaks as a citizen on a matter of public concern, courts then balance "the employee's interest in speaking" against "the government's interest in avoiding disruption to its operations." *Fenico*, 70 F.4th at 162.

Therefore, to determine whether Ms. Ingram's claim should have survived her former employers' motion to dismiss, the District Court was required to ask whether the facts that she alleged in her complaint—taken as true and in the light most favorable to her—plausibly suggest that when she tested her office for mold and reported the results to her supervisors, 1) she spoke as a citizen, 2) on a matter of public concern, and 3) her interest in speaking outweighed the government's interest in avoiding disruption to its operations. *Id.* at 417–19. Because the District Court found that Ms. Ingram could not have

6

spoken as a citizen, it dismissed her claim without discussing the second and third elements of the test. *See Ingram*, 2023 WL 2931943, at *4. Accordingly, we limit our analysis to whether Ms. Ingram's pleadings suffice to make out citizen speech.

Methods for assessing when a public employee speaks as a citizen are well established. "The critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, [and] not whether it merely *concerns* those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014) (emphasis added); *see also Flora v. County of Luzerne*, 776 F.3d 169, 179–181 (3d Cir. 2015) (applying *Lane*). Speech is within the ordinary scope of an employee's duties are those that the employee is "paid to perform on an *ordinary* basis." *Javitz v. County of Luzerne*, 940 F.3d 858, 865 (3d Cir. 2019) (emphasis added). "[T]he mere fact that a citizen's speech concerns information acquired by virtue of [her] public employment does not transform that speech into employee—rather than citizen—speech." *Lane*, 573 U.S. at 240. Nor does speech lose its First Amendment protection merely because it "owes its existence" to the fact of employment. *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 989 (3d Cir. 2014); *see also De Ritis v. McGarrigle*, 861 F.3d 444, 453 (3d Cir. 2017) (citing *Garcetti*, 547 U.S. at 424) (describing a "practical" inquiry). Finally, directing a message to a workplace superior does not bar it from coverage under the First Amendment, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 574 (1968), but hostile reactions from supervisors constitute strong evidence that speech was outside the ordinary scope of employment, *Dahlia v. Rodriguez*, 735 F.3d 1060,

7

1075 (9th Cir. 2013). These are practical, commonsense tests that rely on judicial experience and knowledge about the workplace. *De Ritis*, 861 F.3d at 453.

Here, Ms. Ingram has alleged that testing for and reporting on the presence of mold—or any environmental hazard, for that matter—was not within the ordinary scope of the job she was paid to perform. Although, as Appellees point out, Ms. Ingram's title was "district office manager," her job description is not in the record and there is nothing to suggest that managing indoor environmental hazards was part of her duties. App'x at 19. To the contrary, the parties appear to agree that it was Ms. Pawlik's responsibility as landlord to manage such issues, and that Ms. Ingram only tested and reported on mold because Ms. Pawlik indicated that she was unable to locate the source of the irritant. Furthermore, Ms. Ingram repeatedly asked for instruction on how to handle the situation, suggesting that mold infestations were not a regular concern of her employment. Finally, when Ms. Ingram reported the infestation to Representative Davanzo, he asked—one could imagine not rhetorically—"[w]ho the f— gave you permission to do this?" App'x at 21. None of these alleged facts suggest that Ms. Ingram's job concerned mold remediation and, more importantly, there are no alleged facts to suggest that her claims to the contrary are implausible. Accordingly, the District Court erred in dismissing Ms. Ingram's First Amendment retaliation claim.

## III

8

Because Ms. Ingram's First Amendment retaliation claim does not lack facial plausibility, at least with respect to citizen speech, we will reverse the District Court's dismissal and remand for further proceedings.