**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3043
_____

EMILY SOUSA,
Appellant

v.

AMAZON.COM, INC.; AMAZON.COM SERVICES LLC; LAWRENCE DORSEY, in
his individual and professional capacities
_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 1:21-cv-00717)
District Judge: Honorable Stephanos Bibas[*]
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 2, 2023
_____

Before: SHWARTZ, MATEY, and SCIRICA, Circuit Judges.

(Filed: November 13, 2023)
_____

**OPINION**[**]
_____

---

[*] The Honorable Stephanos Bibas, Circuit Judge sitting by designation pursuant to 28 U.S.C. § 291(b).
[**] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

**PER CURIAM**

Plaintiff Emily Sousa appeals the District Court's order dismissing her claims of employment discrimination, hostile work environment, quid pro quo sexual harassment, and retaliation. For the reasons set forth herein, we will affirm.

I

A[1]

Sousa, a Japanese-American woman, worked for Defendant Amazon as a Level Four shift manager beginning in June 2020. During training, a male manager noted that she had the same name as an adult-film star. Sousa informed Amazon she intended to resign due to this and another sex-based overture, but Amazon asked her to stay and transferred her to a facility in New Castle, Delaware, where she reported to Defendant Lawrence Dorsey. Before Sousa started at the New Castle location, Dorsey told another coworker that he thought Sousa was "really pretty." App. 78.

Dorsey made a series of advances toward Sousa, such as sending her a photograph of himself, asking her what she thought of his haircut, and calling her on at least fourteen separate days over the span of three months primarily to discuss personal matters, such as their dating lives. Sousa further asserts that Dorsey referenced "the prospect of him 'helping' [her] to negotiate a promotion to Level [Five]," App. 88, and alleges that he had

---

[1] Because we are reviewing an order dismissing a complaint under Federal Rule of Civil Procedure 12(b)(6), we accept the factual allegations as true and construe them in a light most favorable to the plaintiff. Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012).

2

a reputation for helping female subordinates who appeared interested in him and disfavoring those who turned him down. Sousa rebuffed Dorsey's advances by telling him she had a boyfriend and was not available to spend time with him alone socially, resulting in Dorsey ignoring her work-related communications.[2]

In November 2020, Dorsey and another colleague approached Sousa and asked if she would be willing to permanently move to an Amazon facility farther away. Sousa declined, but later learned that a white male Level Four manager, who had started working at Amazon several months after Sousa, was offered a promotion to Level Five if he accepted the transfer, an opportunity not offered to Sousa. Soon after, Sousa asserts that Dorsey "demoted" her by temporarily transferring her and a male colleague to a facility in New Jersey, a move that Dorsey acknowledged was "humiliating . . . but [could] humble people."[3] Although Dorsey told Sousa she did not need to accept, she states she felt pressured to do so because he had already put her name down and informed her it would look bad if she declined.

During the ten-day transfer, Sousa performed manual labor and other tasks of a Level One employee rather than her Level Four supervisory duties, was required to work

---

[2] Sousa also asserts that she was subject to race-based discrimination when (1) she was greeted by one colleague with the Chinese word for hello, despite Sousa being Japanese, (2) Dorsey commented that Sousa's Japanese heritage made her "polite and non-confrontational," that she could be his "guide" if he went to Japan, App. 69, and (4) Dorsey told coworkers that she had been compared to someone he thought was an Asian adult actress.

[3] Dorsey told Sousa that the only individuals considered for the transfer were her, a Black woman whom Dorsey had not pursued sexually, and a white man.

night shifts, and her commute time doubled.[4]  Sousa also asserts the transfer cost her

promotion opportunities because promotions were largely based on performance reviews

from subordinates, and Sousa did not have subordinates in her temporary position.[5]

Sousa claims that her stress level increased because of Dorsey's conduct and her

temporary transfer.  After the ten-day transfer ended, Sousa told Dorsey she intended to

resign, but at Dorsey's suggestion she instead took medical leave.

While on medical leave in January 2021, Sousa contacted Human Resources

("HR") to report Dorsey's behavior.  Amazon investigated, but in March 2021, it

informed Sousa that her claims were found to be unsubstantiated.  In response, Sousa

asked to be transferred to another facility, but Amazon told her that she could not apply

for a transfer while she was on leave and could only do so after returning to work at her

assigned facility.  Sousa ultimately resigned.

## B

Sousa sued Amazon under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act

of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, asserting (1) a hostile work environment

claim based on race, ethnicity, national origin and/or sex/gender discrimination, (2) race,

ethnicity, national origin and/or sex/gender discrimination, (3) retaliation, and (4) quid

pro quo sexual harassment.  The District Court dismissed the complaint with prejudice,

---

[4] Sousa also asserts that when she arrived, she was often sent home early because the facility had enough workers.

[5] Sousa's offer letter and the company portal indicated she was eligible for a promotion in March or April of 2021.

4

holding that Sousa had failed to plead (1) a hostile work environment claim under Title VII and § 1981 because she alleged neither severe nor pervasive discriminatory treatment, Sousa v. Amazon.Com, Inc., No. 1:21-cv-717-SB, 2022 WL 4548910, at *3 (D. Del. Sept. 29, 2022); (2) Title VII and § 1981 race or sex/gender discrimination because the only possible adverse action Sousa alleged was Amazon's refusal to transfer her while on medical leave, and she had failed to allege facts showing that the circumstances of that action gave rise to a plausible inference of intentional discrimination, id. at *3, 5-6; (3) Title VII retaliation because Sousa failed to plead that her protected activity caused the adverse action, id. at *5; and (4) Title VII quid pro quo sexual harassment because Sousa did not allege that her rejection of Dorsey led to any significant employment decisions, id. at *6.

Sousa appeals, and we will address each claim in turn.

## II[6]

### A

To succeed on a hostile work environment claim under Title VII and § 1981, an employee must establish that (1) "[she] suffered intentional discrimination because of

---

[6] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review a district court's order granting a motion to dismiss de novo, Krieger v. Bank of Am., N.A., 890 F.3d 429, 437 (3d Cir. 2018), and "we may affirm on any ground supported by the record," Laurel Gardens, LLC v. McKenna, 948 F.3d 105, 116 (3d Cir. 2020). Under Federal Rule of Civil Procedure 12(b)(6), courts "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fleisher, 679 F.3d at 120.

[her protected characteristic]," (2) "the discrimination was severe or pervasive," (3) "the discrimination detrimentally affected the plaintiff," (4) "the discrimination would detrimentally affect a reasonable person in like circumstances," and (5) "the existence of respondeat superior liability." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013); Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 267 (3d Cir. 2010) (explaining that the elements of employment discrimination claims are "generally identical" under § 1981 and Title VII).

Sousa's hostile work environment claim fails because she has not sufficiently alleged that Dorsey's conduct was so severe or pervasive that it altered her conditions of employment. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The question of "whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270-71 (2001) (internal quotation marks omitted).

We cannot say that Dorsey's periodic comments and occasional late-night phone calls in which he sometimes inappropriately veered into Sousa's personal life amounted to more than poor taste that is sometimes part of "the ordinary tribulations of the workplace." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (further explaining that "the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not enough to sustain a hostile work environment claim). To state

6

a hostile work environment claim, the complaint needed to describe conduct that revealed the plaintiff's work environment was so "permeated with discriminatory intimidation, ridicule, and insult" that it "alter[ed] the conditions of [her] employment." Harris, 510 at 21 (internal quotation marks omitted).

Sousa's complaint did not contain such allegations. His after-hours calls were intrusive and his comments ventured into topics a supervisor should avoid but there is no allegation that they were physically threatening, humiliating, or even highly offensive. Moreover, Sousa alleges that Dorsey began to ignore her work calls once she rebuffed his overtures but the complaint does not reveal how that behavior impacted her ability to do her job or show how it otherwise altered her conditions of employment. As a result, Sousa has failed to plead a hostile work environment claim based on her sex.[7]

B

Sousa also did not sufficiently allege sex, gender, national origin, ethnicity, or race discrimination claims. To state such claims, Sousa must plausibly allege that "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action

---

[7] Sousa has also not alleged facts to support a hostile work environment claim based on race, ethnicity, or national origin. Although Sousa alleged one-off incidents based on these characteristics, such as Dorsey's comment to her that her Japanese heritage made her less confrontational at work and a coworker's greeting to her in Chinese, "the mere utterance of an . . . inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate Title VII liability." Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001), abrogated in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). The parties do not dispute that Sousa is a member of a protected class but disagree about whether she suffered an adverse action.

Adverse actions consist of conduct causing a "significant change in employment status," Ellerth, 524 U.S. at 761, such as an alteration of "compensation, terms, conditions, or privileges of employment."[8] Jones, 796 F.3d at 323, 326. Sousa identifies only two events that could be considered adverse actions under our precedent: (1) her temporary transfer to New Jersey and (2) Amazon's promotion of a less-experienced white male employee and not Sousa.[9] Even assuming these qualify as adverse

---

[8] Under our precedent, an employer's action must be "serious and tangible" to qualify as an adverse action. Jones v. Se. Pa. Transp. Auth., 796 F.3d 323, 326 (3d Cir. 2015). The EEOC asks us to revisit this requirement. Sousa did not raise this argument on appeal and, as a general matter, an amicus curiae cannot raise new issues on appeal. See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff, 669 F.3d 374, 382-83 n.2 (3d Cir. 2012). Moreover, as a three-judge panel, we are bound to follow our precedent. See Karns v. Shanahan, 879 F.3d 504, 514 (3d Cir. 2018) (stating that we are "generally obligated to follow our precedent absent en banc consideration" and citing 3d Cir. I.O.P. 9). We thus decline to address the EEOC's argument.

[9] The other events Sousa asserts constitute adverse actions are not. Harassment alone, Dorsey's "cold shoulder," and Sousa's medical leave cannot plausibly be considered adverse actions as Sousa does not allege that these acts effected a "significant change in employment status." Ellerth, 524 U.S. 742, 761 (1998). Even if we were to consider her medical leave as a change in employment status, Sousa sought medical leave on her own accord. Finally, even if a refusal to grant a transfer during medical leave constitutes an adverse action, Sousa alleged not that Amazon refused to ever transfer her, but rather, only that it could not process a transfer while she was on leave, and thus she has not sufficiently alleged that this was an adverse action. See, e.g., Randlett v. Shalala, 118 F.3d 857, 862 (1st Cir. 1997); Krulik v. Bd. of Educ. of N.Y., 781 F.2d 15, 18-19, 22

8

employment actions, Sousa failed to allege that either action occurred under circumstances that could give rise to an inference of intentional discrimination, or that she was qualified for the higher position.  First, Sousa's assertion that her transfer was due to her sex is undercut by her allegation that a male colleague was transferred with her, and she has not alleged any other circumstances to indicate that the temporary transfer was tied to her sex, gender, race, ethnicity, or national origin.  We thus cannot infer that the transfer was due to intentional discrimination.  Second, as to Amazon's failure to offer her the promotion offered to a more junior white male colleague, Sousa failed to allege any facts regarding her qualifications for the position, and thus her failure-to-promote claim fails.[10]  See, e.g., Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 253 (1981) (holding that an applicant must demonstrate their objective qualifications to pursue a failure-to-hire claim).  Sousa's discrimination claims were therefore properly dismissed.

## C

Sousa's retaliation claim similarly fails.  Title VII makes it unlawful for an employer to retaliate against an employee who "has made a charge . . . under" Title VII.

---

(2d Cir. 1986).  Furthermore, Sousa did not allege that someone of a different sex, gender, race, ethnicity, or national origin was permitted to seek a transfer while on leave and thus has not shown she was treated differently from a similarly situated comparator.

[10] Sousa has not provided any facts from which the Court can infer that she was not promoted because she rebuffed Dorsey's overtures.  Among other things, Sousa did not allege that the decisionmaker who offered the white man a promotion knew she rebuffed Dorsey.  Connelly v. Lane Constr. Corp., 809 F.3d 780, 789 (3d Cir. 2016) (noting mere conclusory allegations not entitled to the presumption of truth).

9

42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff must show, among other things, a causal link between her protected activity and the employer's adverse action. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000). In determining whether such a causal connection, courts consider a "broad array of evidence," including whether there is an "unusually suggestive" temporal proximity between the protected activity and adverse action or "intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for [the adverse action], or any other evidence in the record sufficient to support the inference of retaliatory animus." LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232-33 (3d Cir. 2007) (citations and internal quotation marks omitted).

Sousa asserts she engaged in protected activity when she (1) rebuffed Dorsey's advances beginning in October 2020, which she contends led her not being promoted in November 2020 and being temporarily transferred to New Jersey, and (2) complained to HR in January 2021, which she alleges led Amazon to refuse to allow her to apply for a transfer while on medical leave and her constructive discharge. These assertions do not provide a basis for relief. First, Sousa did not allege a causal link between her rejection of Dorsey's advances and her temporary transfer because a similarly situated man was also transferred, and she did not allege that she was qualified for the promotion given to a male coworker.

Second, even assuming Amazon's refusal to transfer Sousa until she returned from medical leave qualified as an adverse action, Sousa failed to allege facts sufficient to

10

infer a causal link between that decision and her complaint to HR.  There is nothing

"unduly suggestive" about the timing between Sousa's January 2021 complaint and

Amazon's refusal to allow her to seek a transfer two months later.  LeBoon, 503 F.3d at

233 (holding that a "gap of three months between the protected activity and the adverse

action, without more, cannot create an inference of causation"); Andreoli v. Gates, 482

F.3d 641, 650 (3d Cir. 2007) (stating a five-month period between the protected activity

and adverse action is "without additional evidence, insufficient to raise an inference of

causation").  Moreover, Sousa failed to allege that the decisionmaker concerning the

transfer request had knowledge of her complaint to HR, or that there was any

"intervening antagonism" between Sousa and Amazon after she filed the complaint.  See

LeBoon, 503 F.3d at 233.  Because Sousa did not plausibly allege a connection between

her protected activities and Amazon's alleged adverse actions, she has not stated a

retaliation claim.

D

Sousa's quid pro quo sexual harassment claim also fails.  Under a Title VII "quid

pro quo" sexual harassment theory, a plaintiff must show that "her response to

unwelcome advances was subsequently used as a basis for a decision about

compensation, [terms, conditions, or privileges o[f] employment]." Farrell, 206 F.3d at

281-82 (quotation marks omitted, alterations adopted).  To determine whether a causal

connection exists between the rejection of the advances and the subsequent adverse

decision, courts consider the behavior of the harassing individual, the timing of the

11

adverse action, and inconsistencies raised in the explanation for the adverse action.  Id. at 286.

As with her retaliation claim, Sousa fails to plausibly allege that her rejection of Dorsey's advances was linked to the decisions to temporarily transfer her and to not offer her the promotion offered to a male employee.  See Farrell, 206 F.3d at 283-84 (explaining that the burden to show causation for a retaliation claim is the same as that required for a quid pro quo sexual harassment or discrimination claim).  As stated previously, a male colleague was transferred with Sousa to New Jersey, and Sousa alleged nothing about the qualifications of either the man who received the promotion or her own qualifications.  Sousa has thus not stated a quid pro quo sexual harassment claim.

III

For the foregoing reasons, we will affirm.